## THORNTON *v.* SCHREIBER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued January 19, 20, 1888. — Decided February 13, 1888.

An employé of a business house, who, having a principal place in the establishment, is entrusted by his employers under their direction and on their behalf with the custody and possession, but in a building occupied by them and subject to their control, of printed copies of a copyrighted photograph, printed in violation of the provisions of Rev. Stat. § 4965, has not such possession of them as will entitle the proprietor of the copyright to proceed against him for a forfeiture of one dollar for every sheet under that section.

The words "found in his possession" in § 4965 of the Revised Statutes do not relate to the finding of the jury that the articles in question were in the defendant's possession, but require that there should be a time before the cause of action accrues, at which they are found in his possession.

Whether the provision in Rev. Stat. § 4965 that one-half of the profit shall go "to the proprietor, and the other half to the use of the United States" does not relate solely to the "case of a painting, statue, or statuary," *quære*.

THE case is stated in the opinion of the court.

*Mr. Frank P. Pritchard* for plaintiff in error.  *Mr. John G. Johnson* filed a brief for same.

*Mr. A. Sidney Biddle* for defendants in error.  *Mr. H. P. Brown*, *Mr. J. R. Paul* and *Mr. J. K. Valentine* were, with him on the brief.

Mr. Justice Miller delivered the opinion of the court.

This is a *qui tam* action brought by the defendants in error, constituting a partnership in the name of Schreiber & Sons, against Thornton, the plaintiff in error, under § 4965 of the Revised Statutes. This is found in c. 3, Tit. LX, which has relation to copyrights. As we have heretofore decided in the case of *Burrow Giles Lithographic Co.* v. *Sarony*, 111 U. S. 53, photographs are included, under certain circumstances, among the things which may be copyrighted.

The plaintiffs in this action allege themselves to be the owners of a valid copyright of a photograph, entitled " The Mother Elephant ' Hebe' and her Baby 'Americus,' " and that the defendant, Thornton, was liable to them under the above section for an infringement of their exclusive right in such photograph. The declaration consisted originally of four counts, but the plaintiffs afterwards obtained leave to amend it by striking out the third and fourth. Of the two counts which remained, the first was for copying and printing said photograph, with the charge that 15,000 sheets of the same were found in the defendant's possession, printed and copied by him, and claiming the sum of $15,000 as forfeited to plaintiffs and to the United States under said section. The second count alleged that the defendant published said photograph, and that 15,000 sheets of the same were found in his possession.

Sec. 4965, on which this action is founded, reads as follows :

" If any person, after the recording of the title of any map, chart, musical composition, print, cut, engraving, or photograph, or chromo, or of the description of any painting, drawing, statue, statuary, or model or design intended to be perfected and executed as a work of the fine arts, as provided

by this chapter, shall, within the term limited, and without the consent of the proprietor of the copyright first obtained in writing, signed in presence of two or more witnesses, engrave, etch, work, copy, print, publish, or import, either in whole or in part, or by varying the main design with intent to evade the law, or, knowing the same to be so printed, published, or imported, shall sell or expose to sale any copy of such map or other article, as aforesaid, he shall forfeit to the proprietor all the plates on which the same shall be copied, and every sheet thereof, either copied or printed, and shall further forfeit one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imported, or exposed for sale; and in case of a painting, statue, or statuary, he shall forfeit ten dollars for every copy of the same in his possession, or by him sold or exposed to sale; one-half thereof to the proprietor and the other half to the use of the United States."

It will be observed that this section gives no right of action to recover damages, merely as such, by the owner of the photograph, but limits the remedy to the forfeiture of the plates on which the infringing article is copied, "and every sheet thereof, either copied or printed," and to the further forfeiture of "one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imported, or exposed for sale." In case of "a painting, statue, or statuary," there is to be a forfeiture of ten dollars for every copy found in the defendant's possession, or by him sold or exposed for sale.

In § 4964, immediately preceding the one under consideration, it is declared that every person who shall, without the consent of the proprietor of a copyrighted *book*, print, publish, import, sell, or expose for sale any copy of such book shall not only forfeit every copy thereof to such proprietor, but shall also forfeit and pay such damages as may be recovered in a civil action by such proprietor. And so in § 4966, which immediately follows the one under consideration, it is declared that "any person publicly performing or representing any *dramatic composition* for which a copyright has been obtained,

without the consent of the proprietor thereof, or his heirs or assigns, shall be liable for damages therefor, such damages in all cases to be assessed at such sum, not less than one hundred dollars for the first, and fifty dollars for every subsequent performance, as to the court shall appear to be just."

It will thus be seen that while this chapter provides a remedy by a civil action on behalf of the owner of the copyright of a book or dramatic composition which has been violated, it makes no such provision in favor of a copyright of "any map, chart, musical composition, print, cut, engraving, or photograph, or chromo, or of the description of any painting, drawing, statue, statuary, or model, &c.," except so far as it forfeits the plates on which they are copied, and the sheets, either copied or printed, and one dollar for every sheet found in the possession of the defendant. Section 4967 also allows an action for damages by the author or proprietor of any *manuscript* published without his consent.

As the action in the present case is brought by plaintiffs below, who sued as well for the United States as for themselves, under the idea that the government was entitled to one moiety of the penalty recovered, an examination of the statute presents a question at the outset as to whether the United States has any interest in the only penalty sought to be recovered, namely, that of one dollar for each sheet of the photographs found in the possession of the defendant. Looking critically at the language of the statute the question is suggested whether the one-half of the amount recovered which is to go to the United States extends beyond the case of "a painting, statue, or statuary."

It will be observed that in the beginning of the penalty denounced in this section it is said that the defendant "shall forfeit to the proprietor [meaning the proprietor of the copyright] all the plates on which the same shall be copied, and every sheet thereof, either copied or printed, and shall further forfeit one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imported, or exposed for sale," and recurring, after a semicolon, to another branch of the subject, it is said that "in case of a paint-

ing, statue, or statuary, he shall forfeit ten dollars for every copy of the same in his possession, or by him sold or exposed for sale; one-half thereof to the proprietor and the other half to the use of the United States."

With regard to the copyrighted articles mentioned in the section under consideration, it would seem that the first penalty is a forfeiture of them to the *proprietor*, and afterwards, when other copyrighted articles, enumerated as "a painting, statue, or statuary," where the amount forfeited is different, it provides that one-half of the forfeiture shall be to the proprietor and the other half to the use of the United States.

This point, however, was not raised by either counsel in the argument, and as we are of opinion that the copies for which judgment was recovered in this case against the defendant were not found in his possession, within the meaning of the statute, it is unnecessary to decide it here.

The suit was brought originally in the District Court of the United States for the Eastern District of Pennsylvania. It was there tried before a jury, and a verdict rendered in favor of the plaintiffs for a forfeiture of one dollar for each of the copies found in defendant's possession, amounting to $14,800, for which judgment was entered in that court. A bill of exceptions, taken at that trial, is found in the record. A writ of error took the case to the Circuit Court for that district, which, on the case as made in the District Court, affirmed its decision. To this latter judgment the present writ of error is directed.

The assignment of errors questions the validity of the copyright, both as regards the subject matter of the photograph, and as regards the evidences of proper proceedings with the librarian to make the copyright effective. There are also other errors assigned, which it might be interesting to examine, but which we do not think necessary to a decision of the case as it is now before us.

The judge in the trial in the court below charged the jury as follows:

"The court instructs you that under the evidence if you believe it, and the court sees nothing that would justify disbe-

lief, the plaintiff is entitled to recover and to have damages assessed at the rate of one dollar ($1.00) for every sheet of that copied photograph found in his [defendant's] possession; and every sheet under his control at the time must be treated as in his possession, notwithstanding the interest his employers may have had in it." . . .

"A large number of the copies, according to the testimony, were upon a shelf." . . .

"And he [the defendant] obtained these copies for the purpose of labels. They were found in the store where he was and under his charge."

"Now, I repeat what I have said, that every sheet under his control (then under his control) — notwithstanding the interest that the firm of Sharpless & Sons may have had in them — every sheet thus subject to his control must be regarded, for the purposes of this suit, as in his possession, and for every sheet thus found in his possession, if you find for the plaintiff, and I see nothing that would justify you in not so finding."

This left nothing for the jury to consider, but whether they would believe the testimony; if they did, it was a peremptory instruction to them to find a verdict against defendant of one dollar for every sheet found in the store of Sharpless & Sons. There is no contradiction in the testimony on the subject of the relation of the defendant, Thornton, to the possession of these 15,000 sheets of the photographs. Sharpless & Sons were a partnership in the city of Philadelphia, and large wholesale dealers in dry goods. Mr. Thornton was, according to his own testimony and that of Mr. Sharpless, employed by them somewhat in the character of a business manager, but his main business was, however, the purchasing of goods which were afterwards sold by that firm. Their place of business was a three or four story building, in which they had large quantities of textile fabrics stowed away for sale, and it was in the second or third story of this building that the sheets were found which are the subject of this suit. They were among other goods, and were to be used by pasting them upon parcels of dry goods, which was also often done at the dyers before the goods were brought to the business house for sale.

That these copies were the property of Sharpless & Sons can admit of no doubt; that they were in their building, subject to their control and use, in the same manner as any of the other goods that they had there, is also clear, as well as the fact that the plaintiffs in this case so understood it.

It appears from the evidence of Francis Schreiber, who was not, however, a member of the plaintiffs' firm, that he went, in company with his brother Henry, to the place of business of Sharpless & Sons, and sought an interview with Mr. Sharpless. In the course of the conversation which ensued he asked Mr. Sharpless where he got the pictures from, and he said "his man who had charge had got it at Queen's," by his man evidently meaning Thornton, the defendant. Then after some conversation about the injury done the proprietors of the picture, Mr. Sharpless said that he did not intend to do anything wrong; whereupon witness then asked him whether he had any of them, to which the reply was, yes, he had a great many of them upstairs. The witness asked him whether they could have them, and Sharpless said, yes, they could have the copies.

This language is inconsistent with any other idea than that Mr. Sharpless considered the matter entirely under his control. This conversation with Mr. Sharpless occurred on the 8th day of May, in their place of business, at the corner of Eighth and Chestnut streets; it was in the second story of the building, and Henry Schreiber, a brother of the witness, was also present.

In regard to this same conversation the witness, Francis Schreiber, was asked: "How came you to ask Mr. Sharpless if he would surrender any of the pictures?" His answer was: "I wanted to know if he had any. . . . That was my object in going there."

Henry Schreiber, one of the plaintiffs, was also sworn, and stated that he was present upon the Saturday morning when the conversation occurred with Mr. Sharpless as to which his brother Francis testified; that he had been there a few days before, upon which occasion he saw Mr. Thornton, who was employed there to the best of his knowledge. He testified that Thornton showed him a picture; that he saw the place

from which it was taken, a shelf, and that there were others, quite a package of them, on the shelf. He further testified that in the conversation on Saturday, Mr. Sharpless said: "Mr. Thornton has the sole charge of that; he gets up the labels, and gets everything that he thinks will be appropriate," or something to that effect, and that Mr. Sharpless also said that Thornton had shown him this picture before it was used, and he (Sharpless) told him to go ahead. He also states that Mr. Sharpless said that they had a lot upstairs, and that he (the witness) could have them all.

Mr. Thornton himself testified that he got up this plate, and ordered 15,000 copies to be made; that these copies were delivered to Sharpless & Sons; that the tickets were often put on the goods at the dyeing establishment, received afterwards by Sharpless & Sons, and sold to other parties. After some further testimony as to the details of this transaction, Mr. Thornton was asked: "Tell us what your business was then at that store of Sharpless & Sons." He replied: "I was employed there as the superintendent of the wholesale domestic department; I have the purchasing of all the goods, the making of the price, and seeing that they are sold." He testified in substance that these prints or copies were paid for by Sharpless & Sons; that he never paid out any money, but that they were paid for as other goods were by that firm in the course of business; that they were contracted for by him and paid for by Sharpless & Sons when the bill was sent to them.

The attempt was made to establish the fact that Thornton had the possession or control of these prints by showing that he was the man who first conceived the idea of getting up and using them in the business of Sharpless & Sons; that he did in effect order the photograph to be made, and only showed it to Mr. Sharpless after this was done. Thornton, however, states that before it was used, and a month before the time the prints were found at the store by the plaintiffs, Mr. Sharpless had known about the photograph and copy; that he approved it, and that the bills were paid by his firm.

We do not see how Mr. Thornton, merely as an employé, although he may have had a principal place in that establish-

ment, could be said to have had the possession of these prints
when they were found by the plaintiffs in the store of Sharp-
less & Sons. In any other light that it can be viewed, that
firm would be held to be in possession.  An action of replevin
could have been sustained against them for the possession of
these goods, or an action of trover, if they had been the prop-
erty of plaintiffs, on account of the possession of them by
Sharpless & Sons.  Sharpless & Sons could have done what
they pleased with them; they could have ordered them
thrown out and burned; they could have given them up, and
they did offer to give them up, to plaintiffs.  It was Sharpless
himself who made this offer, and the plaintiffs obviously un-
derstood that Sharpless was the man with whom they were
dealing all this time.  Their first visits were to him; they
talked the matter over with him; they recognized him as hav-
ing control of the plates, of the prints, of the entire transac-
tion; and it is impossible to conceive that Mr. Thornton had
any other control over those sheets than he had over any piece
of dry goods in the building.  What he did during all the time
in which this transaction occurred was as an employé of Sharp-
less & Sons; and any other clerk, porter, or salesman in that
establishment, who handled these articles, or who had access
to them and could use them upon packages of goods, had as
much possession of them as Mr. Thornton, and any such per-
son could have been sued and a recovery had against him as
lawfully as against Thornton, so far as the matter of possession
is concerned.  What right of action might have been main-
tained against Thornton for actively copying, printing, selling,
or exposing these prints for sale, is not now in question; the
recovery here is based upon the fact of their being found in
his possession.

Counsel for defendants in error, Schreiber & Sons, insist
that the words "found in his possession" are to be construed
as referring to the finding of the jury; that the expression
means simply that where the sheets are ascertained by the
finding of the jury to have been at any time in the possession
of the person who committed the wrongful act, such person
shall forfeit one dollar for each sheet so ascertained to have

been in his possession. We, however, think that the word "found" means that there must be a time before the cause of action accrues at which they are found in the possession of the defendant. If, however, plaintiffs' view of the subject were tenable, the fact still remains that the only possession Mr. Thornton ever had of these prints was the possession of Sharpless & Sons, holding them merely as their employé, subject always to their order and control, and never with any claim of right in him to control them except in their service. .

The instructions of the court to the jury, therefore, on this subject, were erroneous, and the testimony did not justify the charge. For this reason

*The judgment of the Circuit Court is reversed, and the case remanded with instruction to set aside the verdict, and for further proceedings in accordance with this opinion.*