WALKER et al. v. GLOBE NEWSPAPER CO.

(Circuit Court of Appeals, First Circuit. August 30, 1905.)

No. 566.

COPYRIGHT—REMEDY FOR INFRINGEMENT—ACTION FOR DAMAGES.

Rev. St. § 4952 [U. S. Comp. St. 1901, p. 3406], having vested the author or proprietor of any map, chart, etc., who complies with the provisions for securing a copyright, with a property right therein, such right may be protected by all the means known to the general rules of law, by suits for damages or in equity, and the right to maintain an action at law to recover damages for infringement of a copyright of a map is not taken away by implication by the remedies given by sections 4965, 4970 [U. S. Comp. St. 1901, pp. 3414, 3416]; the first providing for a suit to forfeit copies found in the possession of defendant and to recover penalties based thereon, and the second for suits to enjoin future infringements, neither of which remedies is adequate in certain cases.

In Error to the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 130 Fed. 593.

Harvey L. Boutwell (A. W. Levensaler, on the brief), for plaintiffs in error.

William Quinby (Charles T. Gallagher, on the brief), for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. In this case the plaintiffs below are also the plaintiffs in error. Therefore we may speak of plaintiffs and defendant without any qualification of the terms. The suit was brought in the Circuit Court, according to the practice and pleadings of the common law, to recover damages for the alleged infringement in June, 1903, of the plaintiffs' copyrighted map. On demurrer, judgment was rendered for the defendant. Thereupon the plaintiffs took out this writ of error.

The statutory provisions immediately applicable are two sections of the Revised Statutes as they stood before either was amended. The first is as follows:

"Sec. 4952. Any citizen of the United States or resident therein who shall be the author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print or photograph or negative thereof, or of a painting, drawing, chromo, statue, statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators or assigns of any such person shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same." [U. S. Comp. St. 1901, p. 3406.]

The second is as follows:

"Sec. 4965. If any person, after the recording of the title of any map, chart, musical composition, print, cut, engraving or photograph, or chromo, or of the description of any painting, drawing, statue, statuary, or model or design intended to be perfected and executed as a work of fine arts, as provided by this chapter, shall, within the term limited, and without the consent of the proprietor of the copyright first obtained in writing, signed in presence of two

140 F.—20

or more witnesses, engrave, etch, work, copy, print, publish, or import, either in whole or in part, or by varying the main design with intent to evade the law, or, knowing the same to be so printed, published, or imported, shall sell or expose to sale any copy of such map or other article, as aforesaid, he shall forfeit to the proprietor all the plates on which the same shall be copied, and every sheet thereof, either copied or printed, and shall further forfeit one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imported, or exposed for sale; and in case of a painting, statue, or statuary, he shall forfeit ten dollars for every copy of the same in his possesson, or by him sold or exposed for sale; one-half thereof to the proprietor and the other half to the use of the United States." [U. S. Comp. St. 1901, p. 3414.]

Also section 4970 is as follows:

"The Circuit Courts, and District Courts having the jurisdiction of Circuit Courts, shall have power, upon bill in equity filed by any party aggrieved, to grant injunctions to prevent the violation of any right secured by the laws respecting copyrights, according to the course and principles of courts of equity, on such terms as the court may deem reasonable." [U. S. Comp. St. 1901, p. 3416.]

The Revised Statutes provide in terms no other proceeding against the infringer of a copyrighted map; and on that topic, beyond what we have stated, they are silent. Subsequently, by Act March 2, 1895, c. 194, 28 Stat. 965, section 4965 was amended so as to make a maximum and minimum penalty for infringement of photographs and works of art; but, so far as we perceive, this amendment does not concern this case, and there is no claim that it does. Also, there have been various other amendments recognizing specifically suits for damages under the copyright statutes, which suggest a possible implication that Congress considered that section 4965 gave originally an exclusive proceeding at law; but we need not consider them, because, if that implication arises, it arose also out of sections 4964 and 4970 of the Revised Statutes. We will find it necessary to return to this suggested implication.

Much has been said to us with reference to what is sometimes called the federal common law. That all such discussion is useless is clearly settled by Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055, and Western Union Company v. Call Company, 181 U. S. 92, 101, 21 Sup. Ct. 561, 45 L. Ed. 765. As assumed in the latter case, and as said also by us in Brigham v. Brigham Hospital, 134 Fed. 513, 526, 67 C. C. A. 393, and as required by the various provisions of the Revised Statutes which, so far as rights are concerned, adopt the statutory or common law of the state where the cause of action arose, and, so far as the remedy is concerned, the statutory or common law of the state where the litigation is pending, it is the laws of those states which we are to ascertain, although, in regard to the determination of what the laws are, the federal courts are not always bound by the local decisions. It is enough, so far as this case is concerned, to say that the law is settled, beyond all question, that no common-law title is involved, and that the title of the plaintiffs depends wholly on the statutes of the United States. Wheaton v. Peters, 8 Pet. 591, 660, 661, 8 L. Ed. 1055; Coppinger's Law of Copyright (4th Ed., 1904) 73. In view of the fact that the law is thus established in the United States, it is not necessary that we should consider the varying positions which have been

taken in England. Nor is it necessary that we should discuss the suggestion made in Holmes v. Hurst, 174 U. S. 82, 85, 19 Sup. Ct. 606, 43 L. Ed. 904, to the effect that, in this country and in England, a right to control publication did exist by the common law, now superseded by statute, because this was a mere dictum, while in Wheaton v. Peters, 8 Pet., at pages 654, 660, 661, 8 L. Ed. 1055, the question of a common-law right was directly in issue, and it was solemnly adjudicated that Congress did not sanction any existing right, but created one.

The property right being established, the common-law remedies attach, whether the right arises out of the common law or under a statute, unless there is something in the statute to the contrary. This rule is so firmly established in both the federal courts and the state courts that it is not necessary that we should elaborate the topic. Frequently the statute is so framed that the remedy arising thereon is by an action of debt. Chitty on Pleading, *125. But, under the statute of Westminster, and independently of it, the register framed with the utmost liberality writs on the case to meet every emergency. Blackstone's Commentaries, vol. 3, 51, 52, 53. It is, however, asserted that section 4965 of the Revised Statutes is exclusive of all other proceedings at law. It is to be observed, first of all, that the property right is given by a separate provision of law, namely, section 4952. This section and section 4965 came through Act July 8, 1870, c. 230, 16 Stat. 198, entitled "An act to revise, consolidate and amend the statutes relating to patents and copyrights." Of course, this was only a consolidation, as said in its title; so that both the act of 1870 and the Revised Statutes are to be construed as not changing the law, except so far as they contain something clearly to that effect. McDonald v. Hovey, 110 U. S. 619, 4 Sup. Ct. 142, 28 L. Ed. 269, and many other authorities.

Therefore, applying the settled rules of construction, it is necessary to examine the entire Congressional legislation on this topic historically, and to go back to the original copyright statute, approved on May 31, 1790. 1 Stat. 124, c. 15. That gave no express remedy to the owner of any copyright, unless it was the same penalty and forfeiture found at present in section 4965 of the Revised Statutes. It provided no remedy in equity or by action at common law. Section 1 of that act was, so far as this case is concerned, the same as section 4952 of the Revised Statutes and section 2 the same as section 4965; so that, as what intervened between the act of 1790 and the Revised Statutes was purely codification, so far as these sections are concerned, it becomes important to study the nature, construction, and effect of the orginal legislation. In order that the whole position may be understood in all its aspects, it may be added that there was no further legislation until the act approved on April 29, 1802 (2 Stat. 171, c. 36), which concerned nothing which could affect this litigation. The law stood in that way until the act approved on February 15, 1819 (3 Stat. 481, c. 19), which declared the remedy in equity now found by codification in section 4970 of the Revised Statutes, subsequent to which act the bill in equity in Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055, was brought.

We should, then, consider whether the penalties and forfeitures provided by the second section of the act of May 31, 1790, excluded such a remedy at common law as is asked in the present suit. This statute contained the provision found in section 4965 of the Revised Statutes to the effect that the penalties should go one half to the proprietor of the copyright and the other half to the use of the United States. The provision in the Revised Statutes giving larger penalties in cases of paintings, statues and statuaries came in at a later day by amendment. This was probably overlooked when a doubt was sug-. gested in the opinion in Thornton v. Schreiber, 124 U. S. 612, 615, 8 Sup. Ct. 618, 31 L. Ed. 577, and in that in Bolles v. Outing Company, 175 U. S. 262, 265, 20 Sup. Ct. 94, 44 L. Ed. 156, whether the United States have any interest under the Revised Statutes except in the penalties to be recovered on account of paintings, statues and statuaries. Looking, then, at the history of the statutes, there can be no question that,. as said by the Supreme Court, they provided strictly qui tam suits. Backus v. Gould, 7 How. 798, 811, 12 L. Ed. 919. Section 4965 of the Revised Statutes was expressly adjudicated a penal statute in Schreiber v. Sharpless, 110 U. S. 76, 3 Sup. Ct. 423, 28 L. Ed. 65. This is enough for our purposes.

In King v. Harris, 4 T. R. 202, 205, it was adjudicated by the King's Bench that it is clearly an established principle that, when a new offense is created by a statute, and the penalty is annexed by a separate clause, the prosecutor may sue for the penalty or proceed on the prior clause on the ground of a misdemeanor as at common law. This case has been so frequently recognized as an authority that there would be no impropriety in holding that, as section 1 of the act of 1790 vested a title, the author, or other proprietor of a copyright, would be at liberty to proceed by his common-law remedy, and would not be restricted to the specific proceeding authorized by the separate section 2. However, we have no occasion to rely on the somewhat narrow rule of King v. Harris. The broader rule everywhere admitted is that given by Lord Kenyon, speaking for the King's Bench, in Beckford v. Hood, 7 T. R. 616, 623, decided in 1798. That arose on the statute from which the act of May 31, 1790, was framed, that is, the original copyright act of the reign of Queen Anne. So far as this case is concerned, it was precisely the same as the act of 1790. It vested a statutory right in the author, or proprietor, who had proceeded in accordance with its terms, and it provided a penalty for a violation of the copyright. The precise question arose in Beckford v. Hood which arises here. Lord Kenyon said that the penalties were cumulative, that they were given to a common informer, that nothing could be more incomplete as a remedy, and that he could not think the Legislature would act so inconsistently as to confer the right and leave the party whose property was invaded without redress. It is true, as he said, that, in that particular case, the penalties might be sued for by a common informer, while, under our statute of 1790, they could be sued for only by the proprietor of the copyright. However, that is a fact of no particular consequence, because the proceeding under the federal statutes is held by the Supreme Court to be strictly qui

tam, and quite as inadequate as the proceeding authorized by the statute of Queen Anne.

This rule of Beckford v. Hood has always been admitted, alike in England and in the United States; and it stands without ever being questioned. The reasons on which it was based were well explained in Barden v. Crocker, 10 Pick. 383, 389. In Vallance v. Falle, 13 Q. B. D. 109, 111, decided in 1884, Beckford v. Hood was recognized, but held not to apply where it was obvious that, taking the statute as a whole, the Legislature intended that there should be no proceeding except 'for the penalties. In Sedgwick on Statutory and Constitutional Law (2d Ed., 1874) 77, 342, and in Sutherland's Statutory Construction (2d Ed., 1904) 1057, 1058, Beckford v. Hood was fully recognized, and various decisions cited where its rule has been applied. Finally, as we have intimated, nowhere can any textwriter or authoritative case be found in which Beckford v. Hood has been refused application.

We may add that the plaintiffs rely on two Scotch decisions. Tennyson v. Forrester, 43 Scottish Jurist, 278, decided on October 10, 1871, and Cadell v. Robertson, 5 Paton, 493, decided on July 16, 1811. Tennyson v. Forrester, however, clearly turned on the view of the law in Scotland that the right of an author to control publication exists independently of statute; and the earlier case apparently involved the same view. Each of them cited Beckford v. Hood, but not with reference to the point for which we are using it. Therefore we cannot safely rely on these decisions.

As the proceeding under section 2 of the act of 1790, and likewise under section 4965 of the Revised Statutes, is merely a qui tam action, it is subject to the arbitrary control of the executive officers of the United States, until at least it is developed so far as to give a right beyond the mere possibility of suit. United States v. Morris, 10 Wheat. 246, 6 L. Ed. 314; The Laura, 114 U. S. 411, 5 Sup. Ct. 881, 29 L. Ed. 147. Also, the action does not survive. Schreiber v. Sharpless, 110 U. S. 76, 3 Sup. Ct. 423, 28 L. Ed. 65. Neither can an action of this kind be brought out of the jurisdiction where the statute was enacted. Wisconsin v. Insurance Company, 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239. It is now held to be so narrow that suit will not lie except against some person in whose possession the infringing matter may be actually found; so that thereby the principal infringer may escape, and the penalty recovered will depend, not on any sound, reasonable discrimination, but on mere accident. Bolles v. Outing Co., 175 U. S. 262, 20 Sup. Ct. 94, 44 L. Ed. 156. Therefore this proceeding for penalties is so far from affording a reasonable remedy that the statute must be said to be 'within the observations in that respect of Lord Kenyon in Beckford v. Hood.

Dealing thus with the act of 1790, it seems to us the conclusion is clear that its second section did not exclude any suitable remedy, either according to the course of equity or of the common law. The corresponding provisions of the Revised Statutes (sections 4952 and 4965), as we have seen, are in substance the same as those of the statute of 1790, and are only parts of a general codification. It is true, as we

have said, that there are amendatory acts with reference to remedies. So far as copyrighted maps are concerned, all there is in that direction is the statute of 1819, already referred to, now found in section 4970 of the Revised Statutes. This names a bill in equity in the usual course. The result of that is merely an injunction against future infringements, and an account of profits. Section 4921 of the Revised Statutes [U. S. Comp. St. 1901, p. 3395], authorizing equity courts to award damages, relates only to patents, and does not reach copyrights. This suit now before us illustrates that even the remedy given by section 4970 is ineffectual, because, in this particular case, it would prove worthless. One newspaper after another throughout the entire territory of the United States might republish the complainants' maps, but each would only do it once, leaving no opportunity for an injunction. So far as profits are concerned, it is too plain for elaboration that the publication of a single illustration in a daily newspaper affords a very difficult basis for a computation in that direction. The only remedy of any value to which the owner of a copyrighted map could resort is a suit at law for damages.

In Vallance v. Falle, 13 Q. B. D. 103, 110, 111, already cited, it was observed that, in Beckford v. Hood, about which we have said so much, if "the penalty had been held to be the only remedy, the value of copyright would have been utterly destroyed." The general rule was stated to be in substance that "the provisions and object of the particular enactment must be looked at, in order to discover whether it was intended to confer a general right which might be the subject of an action, or to create a duty sanctioned only by a particular penalty, in which case the only remedy for breach of the duty would be by proceedings for the penalty." Fourth National Bank v. Francklyn, 120 U. S. 747, 752, 753, 7 Sup. Ct. 757, 30 L. Ed. 825, laid down no general rule, but was limited to the particular class of statutes then before the court, namely, statutes relating to the liability of stockholders, which are generally made conditional, and as to which it generally happens that special legislative provisions are necessary in order to secure a remedy. There are, of course, numerous other decisions which hold that the particular remedy pointed out by the statute which creates a statutory right must be pursued. Arnson v. Murphy, 109 U. S. 238, 3 Sup. Ct. 184, 27 L. Ed. 920, is one of this class, and, especially, many of them will be found in the decisions of the Supreme Judicial Court of Massachusetts; but, on being carefully examined, none of them will appear inconsistent with our propositions. In fact, the observation of Mr. Justice Miller in Dennick v. Railroad Company, 103 U. S. 11, 17, 26 L. Ed. 439, states what we have shown to be the governing rule:

"It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts enforcing it, is in any manner dependent on the question whether there is a statutory right or a common-law right."

Unless a statute is brought within the expressions contained in Vallance v. Falle, or within the necessities of Fourth National Bank v. Francklyn, or contains peculiar phraseology, there is no sound rule of construction which justifies a conclusion that, because it gives a special remedy, the special remedy should be held to be exclusive.

Therefore, for the various reasons we have stated, we think the merits of this case are with the plaintiffs.

We have already referred to the possible implication arising out of sections 4964 and 4970 of the Revised Statutes. We may also refer in this connection to section 4966. Section 4964 provides for a forfeiture, and also for damages to be recovered in a civil action in any court of competent jurisdiction; but it is limited to infringements of the copyrights of books. Section 4966 provides for no penalty, but assesses damages as to the court shall appear just; the maximum being $100. This section is limited to unauthorized representations of copyrighted dramatic compositions. Section 4970 declares a remedy in equity with reference to all copyrighted matter, and is the legitimate descendant of the act of 1819 to which we have already referred. The two first-named sections have been amended, but we have no particular occasion to refer to the amendments. It is to be noted that there are also special like provisions with reference to infringements of patents issued for inventions, but we are not aware that we have occasion especially to refer to them.

It is said that the sections of the Revised Statutes which we have named (4964, 4966, and 4970), the legislation out of which they arose, and the legislation amendatory thereof, inasmuch as they expressly provide for actions for damages and suits in equity, bar by implication all such as are not included within their terms; and it is conceded that the suit before us is not thus included. If, however, the right in the owner of a copyright to protect his title by all the means known to the general rules of law, by suits for damages or in equity, existed under the statute of 1790, as it did, this right is of too substantial a character to be annulled by any implication, unless so necessary as not to be done away with. Any general implication arising from such legislation as we have referred to can easily be met on the theory so often justified, and so often necessary, that the legislation was ex majore cautela, and was only a formal declaration of the common law. But this legislation as a whole can be met in a more emphatic manner. While, in the course of many and varied statutes, it has taken on different forms of expression, it originated in the necessity of securing jurisdiction to the courts of the United States, or of making it clear in regard to copyrights and patents. That was the seed from which all sprung, and therefore it must all, as a mass, be accounted for accordingly. Exactly how or why it got broken up in the way it did, or came to use for the same general purpose different forms of expression, may be difficult to explain; and we have no necessity therefor. The key to it all is found in the ninth paragraph of section 629 of the Revised Statutes, [U. S. Comp. St. 1901, p. 504], and in the fifth paragraph of section 711 [U. S. Comp. St. 1901, p. 578], which, as the culmination of much legislation, vest original and exclusive jurisdiction in copyright and patent cases in the Circuit Courts of the United States. These provisions are believed to have originated, so far as copyrights are concerned, in Act July 8, 1870, c. 230, § 106, 16 Stat. 215. That act did not use the word "exclusive"; but it provided that all controversies at law or in equity should be originally cognizable by the Circuit

Courts, or federal courts of equivalent jurisdiction. A like statute as to patents was early interpreted to vest those courts with exclusive jurisdiction, as is clearly explained in Hovey v. Rubber Tip Pencil Company, 57 N. Y. 119, 123, 124, 15 Am. Rep. 470. When the Revised Statutes were enacted, this interpretation was adopted by the use in section 711 of the words "exclusive of the courts of the several States."

That this last statutory declaration was deemed necessary carries with it the implication, which we have already stated, that common-law remedies at once attach themselves to titles which are purely statutory, and to the further implication that like ordinary trespasses on lands the title to which is held under patents of the United States, and even questions as to the boundaries of such patented lands, including as an extreme example questions of alluvion, suits against infringers, except for express statutory provisions, are entertainable by the state courts, and not by the Circuit Courts, unless concurrently in cases of proper diversity of citizenship. Certainly this was the early view, because it is apparent that it was understood that, under the act of 1790, state courts had jurisdiction according to common-law principles, both over suits for damages and proceedings in equity, against infringers of all copyrighted matter, and that the Circuit Courts had no jurisdiction in reference to the same, except for a penalty given by a federal statute, and except, also, in cases of diversity of citizenship. Consequently, the state courts were resorted to accordingly. Indeed, this general view is expressed in Bumps' Patents, Trade-Marks, Labels, and Copyrights (2d Ed., 1884) 18, where the author says that the legislation now found in section 629 of the Revised Statutes did not extend or enlarge the powers of the Circuit Courts over the subject-matter of a bill or cause of action, but only extended their jurisdiction to parties not before falling within it. This is put more authoritatively by the Supreme Court in Evans v. Eaton, 3 Wheat. 454, 518, 4 L. Ed. 433, where, with reference to the patent granted to Oliver Evans by a special act, the court held that the Circuit Court had jurisdiction to protect his interests, and that he was not obliged to resort to the state courts, notwithstanding there was no diversity of citizenship, because, although his rights arose under a private act, yet that act was by implication, so far as relief was concerned, engrafted into the general statutes for the promotion of the useful arts.

The first enactment of the class which we are considering is the statute of February 15, 1819 (3 Stat. 481, 482, c. 19), to which we have already referred. That was entitled "An act to extend the jurisdiction of the Circuit Courts," etc. It assumed nothing more than to give the Circuit Courts jurisdiction "of all actions, suits, controversies and cases arising under the laws granting authors and inventors exclusive rights." It then proceeded that, on any bill in equity, the Circuit Courts should have authority to grant injunctions. It thus clearly recognized jurisdiction in equity to grant injunctions in all copyright cases; but it is true that it does not specify the kind of suits at law which authors, as well as inventors, were entitled to bring. It must be said, however, that if, under the act of 1790 (the only statute

on this topic until that of 1819 so far as copyrights were concerned), no action for damages at common law would lie, so much of the act of 1819 as related to suits in behalf of authors was waste material, because the federal courts already had jurisdiction over suits for penalties. However, it was always declared that this statute was intended simply to extend the jurisdiction of the Circuit Courts, and not to create new rights. Sullivan v. Redfield (decided in 1825) 1 Paine, 441, 447, Fed. Cas. No. 13,597; Pierpont v. Fowle (decided in 1846) 2 Woodb. & M. 23, 27, Fed. Cas. No. 11,152. Therefore, as the purpose of this act was peculiar and clear, it carries no possible implication against the view we take of the act of 1790. What remains of this statute is distributed between sections 629 and 4970 of the Revised Statutes. It is the legitimate source of section 4970, and the proper origin thereof; and therefore it removes that section from further consideration. There was no materially new legislation on this particular topic, so far as concerns copyrights, until the act of August 18. 1856 (11 Stat. 138, 139), which we will refer to again.

Meanwhile it is plain from Atwill v. Ferrett (1846) 2 Blatchf. 39, 40, 41, 47, 48, Fed. Cas. No. 640, that suits at common law for infringements of copyrights were advised and brought by the legal profession, and that, in the opinion of judges of such unquestioned experience and ability as Mr. Justice Nelson and Judge Betts, such suits might be maintained if laid in case, which is the substance of the suit at bar, and its form so far as under the Massachusetts practice act a question of form of that character can arise. Of course, in view of the difficulty of proving damages, and also in view of the desirability of coming into federal courts, it may well be assumed that formerly a favorite method of procedure was for the penalties given by the act of 1790, and that common-law suits were but little resorted to until the statute remedy for penalties received its final blow in 1899 in Bolles v. Outing Company, 175 U. S. 262, 20 Sup. Ct. 94, 44 L. Ed. 156. It is true that this decision relies to a certain extent on Backus v. Gould, 7 How. 798, 12 L. Ed. 919, decided as early as 1849; but the fact that Bolles v. Outing Company is found in the Supreme Court Reports in 1899 shows that the profession did not wholly acquiesce in Backus v. Gould, which, after all, as appears by its concluding sentence, at page 812 of 7 How., 12 L. Ed. 919, was justiciable on a mere question of pleading. At any rate, until Backus v. Gould, a liberal rule prevailed, to such an extent that the statutory words "found in his possession," relied on in Bolles v. Outing Company, were construed to mean "found to have been in his possession;" and this as late as the decision of Chief Justice Taney in Reed v. Carusi (1845) Taney, 72, 75, Fed. Cas. No. 11,642.

If we have occasion for any further investigation, section 4966 of the Revised Statutes is easily desposed of. This originated in the act of August 18, 1856, to which we have already referred, and it is traced from that act through Act July 8, 1870, § 101, 16 Stat. 214. The purpose of that legislation was peculiar and clear. It was simply to give a practical rule of damages in behalf of the owners of copyrighted dramatic compositions, which peculiar and clear purpose removes it from the field of further consideration. This leaves only section 4964

of the Revised Statutes, which finds its origin in section 99 of the act of July 8, 1870 (16 Stat. 214). It gives a fixed sum to the proprietor of a copyrighted book, and it is limited to books. In its form as found in the act of 1870, or in the Revised Statutes, it is difficult of construction and its purpose is not plain. It may well be assumed that it was intended to obviate some of the disadvantages arising under the penal provisions of the act of 1790, as now found in section 4965 of the Revised Statutes. The portion, however, of section 4964 relied on by the defendant is the provision that the infringer "shall also forfeit and pay such damages as may be recovered in a civil action by such proprietor in any court of competent jurisdiction." This gave a specific remedy to the proprietor of the copyright of a book, and it might well be considered that the particular relief so given was not penal, nor in the nature of a qui tam suit, but remedial; so that it was necessary to remove all implication against the possible taking away thereby of other remedial proceedings. The fact that the word "forfeit" is used in connection with the damages to be recovered in a civil action, as well as in connection with each copy of the infringing book which becomes under the statute the property of the proprietor of the copyright, shows a strange confusion of thought, or indicates that, as the suit for damages is purely remedial, the forfeiture of infringing copies is also to be held remedial. Consequently we are well fortified in the proposition that it was necessary to remove any implication that the authorization of one proceeding which was in effect remedial, or regarded as such, would bar other remedial proceedings under the rules of the common law. However, this section is limited to copyrighted books, it has no relation to maps, and its precise purpose, construction, and effect are doubtful; so that for these particular reasons, as well as for the general reasons which we have already given, neither this section nor any other provision of statute to which our attention has been called, has sufficient pertinency to take away, directly or indirectly, by implication or otherwise, the substantial rights of a plaintiff as they existed according to the rules of the common law under the statute of 1790. We may, however, well repeat that we might safely have passed by all this discussion of the history and particular features of the various statutes which we have examined, and relied on the general proposition with which we commenced, that the substantial rights at common law which existed under the original act of 1790 are not to be held to have been taken away by implication arising from other subsequent legislation, unless, after the circumstances and purposes under and for which the legislation was enacted have become thoroughly understood, it is clearly seen that the implication is of so necessary a character that it must be yielded to.

The defendant asserts some narrow grounds of demurrer. The first is that there is an insufficient lack of allegation because the declaration does not state that the map in question was made from data or information worked out by its author. The declaration alleges originality substantially in the language of the statute, which is the ordinary form of pleading, and is all that is necessary. The defendant also maintains that the pleadings are in the alternative, to the effect

that the plaintiffs are "authors, designers, inventors, or proprietors." This objection was not specifically assigned. Therefore, inasmuch as the declaration contains sufficient matter informally alleged, it probably could not be taken advantage of at common law under this demurrer, in which this alleged defect is not specially pointed out. It certainly is not available under the Massachusetts Practice Acts. Rev. Laws 1902, p. 1552, c. 173, § 14.

The judgment of the Circuit Court is reversed, the case is remanded to that court for further proceedings according to law, and the plaintiffs in error recover their costs of appeal.