ALTMAN v. NEW HAVEN UNION CO.

(District Court, D. Connecticut. November 2, 1918.)

No. 1427.

1. COPYRIGHTS ⊜83—SUIT FOR INFRINGEMENT—EVIDENCE.

In a suit for infringement of copyright, a receipt given by complainant on settlement with another infringer, from whom defendant obtained the photograph which it copied, *held* not admissible as a defense, although competent as bearing upon the equities between the parties; the rule being no different in copyright cases than in other actions.

2. COPYRIGHTS ⊜9—SUBJECTS OF COPYRIGHT—PHOTOGRAPH.

A photograph of a high school class, made under an arrangement by which the photographer was to receive for his work only the proceeds of such copies as he might sell, *held* copyrightable by him.

3. COPYRIGHTS ☞77—INFRINGEMENT—JOINT INFRINGERS.

    One who obtained and published a copy of a photograph, which was an infringement of a copyright, but without knowledge of the fact, was not a joint, but an independent, infringer.

4. COPYRIGHTS ☞52—SUIT FOR INFRINGEMENT—DEFENSES.

    That defendant innocently published a copy of a photograph, and had no knowledge that it was copyrighted, is not a defense to a suit for infringement of the copyright.

In Equity. Suit by Charles Albert Altman against the New Haven Union Company. Decree for complainant.

Arthur W. Chambers, of New Haven, Conn., for plaintiff.

Philip Pond, of New Haven, Conn., for defendant.

THOMAS, District Judge. This is a bill alleging infringement of a copyrighted photograph, containing the usual prayer for an injunction and damages, and the action is based upon the provisions of the Copyright Law of March 14, 1909, c. 320, 35 Stat. 1075, as amended by Act Aug. 24, 1912, c. 356, 37 Stat. 488, Act March 2, 1913, c. 97, 37 Stat. 724, and Act March 28, 1914, c. 47, 38 Stat. 311 (Comp. St. 1916, § 9517 et seq.).

The answer is in effect a general denial, and sets up certain facts which show the circumstances under which the picture was printed, all of which amount to a confession and avoidance of the claims of the plaintiff, that the photograph was not copyrightable, and that the plaintiff was paid in full by reason of the receipt given for $300 in settlement of a suit in this court entitled Altman v. New Haven Printing Co. et al.

The relevant facts upon which this decision must be based are found to be as follows:

The graduating class of the New Haven High School of 1914, acting through a committee duly appointed, arranged with The New Haven Printing Company to print its Class Book, which was to contain, among other things, a group photograph of the class.

In order to secure this photograph, a committee of the class was appointed to make the necessary arrangements, to the end that a proper photograph could be secured, which could also be sold separately to such of the individual members of the class as desired to secure a copy.

After conferring with various photographers, arrangements were finally made with the plaintiff, whereby he was to take the picture of the class on the front steps of the High School building, and for which he was to receive $1.50 for each photograph sold to such members of the class as desired to purchase a copy at that price. The plaintiff was under no other contract as to price than as stated; i. e., no arrangement or contract was made whereby he was to receive any pay for his services as a photographer. At the appointed time the class, some 500 in number, assembled on the front steps of the High School. The plaintiff is, and has been for some years past, one of the leading photographers of the city, and has had a wide and varied experience

in taking all kinds of indoor and outdoor photographs, and thoroughly understands the art. He grouped the members of the class, arranged their positions, and did all of the work necessary to secure a proper negative, from which an acceptable photograph could be made, and which resulted in a pleasing, satisfactory, and, so far as such a production may be, an artistic photograph, at least sufficiently so as to bring it within the realm of those things which may be copyrighted in accordance with the provisions of the Copyright Law of 1909, as amended.

As soon as the photograph was developed, steps were immediately taken by the plaintiff to protect his rights in the same by applying to the Copyright Office in Washington, and pursuant to the steps so taken, and in conformity with law, on May 23, 1914, plaintiff received his certificate of registration under the seal of the Copyright Office. The negative from which the photographs were printed was marked by the plaintiff in conformity with the provisions of law, so that all photographs made from the negative were properly and legally marked.

In due time the proper members of the class committee submitted the photograph to the New Haven Printing Company for entry in the Class Book. The photograph was too large, and it was decided that it was necessary to cut the picture down; hence the members of the committee having charge of the matter cut the top and bottom of the photograph off. In doing so, all of the background and foreground were taken away, leaving only the members of the class, with a scant margin around the four sides of the picture. In cutting off the top or background of the picture, all of the High School building shown in the original disappeared; and in cutting away the front or foreground, all of the street and some of the sidewalk disappeared, and with them the copyright marks: "© Altman, New Haven, Conn. N. H. H. S. 1914."

In this reduced condition the photograph was taken by the class committee to the Stoddard Engraving Company, which made a copper cut from which the New Haven Printing Company printed the pictures. But it was finally decided that, instead of including the picture as part of the book, it should be printed separately and distributed with the book to each member of the class purchasing the book, and some 350 or more were thus printed by the New Haven Printing Company and distributed to the members of the class. This reduced the sale of photographs the plaintiff expected to make, because by purchasing the Class Book each member thereby secured a copper-plate photo identical with the original photo, except for the trimming and cutting off as above described. In fact, the sales by the plaintiff of his original photograph were so few as to make them negligible.

The defendant is, and has been for many years past, the publisher of one of the large newspapers of the state, printing a daily and Sunday edition of many thousand copies, and has a wide and extensive circulation in the city of New Haven and vicinity, and is always active in advancing the civic interests of the city, and takes a lively interest in all that pertains to the educational welfare of the community. Through one of its reporters, duly assigned by the manager of the

paper for such purpose, it secured one of the photographs of the class, made from the Stoddard Engraving Company's plate and printed by the New Haven Printing Company, for the purpose of using the same by way of embellishment to a "story" or news item in its issue of Sunday, May 31, 1914, concerning the graduating class of the New Haven High School, which was then soon to graduate. From such photograph, in its own photo-engraving rooms, a proper cut was made, and the picture printed in the Sunday issue of May 31, 1914. This was done without knowledge that the original photograph was copyrighted, and without knowledge, so far as the evidence shows, that the picture then in its possession and printed in its newspaper was even a copy of a copyrighted photograph. The evidence is conclusive that the acts of the defendant in printing the picture were entirely innocent, and that its violation of the plaintiff's rights, if any, was technical in the highest degree.

[1] On August 25, 1915, the plaintiff brought suit in this court against the New Haven Printing Company, the members comprising it, and the Stoddard Engraving Company for violation of his copyright for the acts above set forth, which suit was on the 13th of October, 1914, settled, and a release given, as appears from the following receipt, which was offered in evidence at the trial of this case, and tentatively received, subject to final ruling at this time:

"Whereas, the Stoddard Engraving Company, a Connecticut corporation, doing business in New Haven, Connecticut, and Edward G. Fenton and Frederick A. Krooner, individually and doing business under the name and style of Fenton & Krooner and New Haven Printing Company, have infringed the copyright of Charles A. Altman, for a photograph entitled 'New Haven High School 1914 Graduating Class'; and

"Whereas, suit has been instituted by said Charles A. Altman against said Edward G. Fenton and Frederick A. Krooner, individually and under the name and style of Fenton & Krooner and New Haven Printing Company, and the same is now pending in the District Court of the United States, District of Connecticut; and

"Whereas, the said Stoddard Engraving Company and said Edward G. Fenton and Frederick A. Krooner, individually and as Fenton & Krooner and as New Haven Printing Company, agree to discontinue said infringement:

"Now, therefore, in consideration of the sum of three hundred dollars ($300) in hand paid, the receipt of which is hereby acknowledged, I do hereby relinquish any and all claims I have against the said Stoddard Engraving Company, said Edward G. Fenton and Frederick A. Krooner, individually and under the name and style of Fenton & Krooner and New Haven Printing Company, arising out of said infringement.

"Dated at New Haven, this 13th day of October, 1914.
　　　　　　　　　　　　　　　　　　"Charles A. Altman,
　　　　　　　　　　　　　　"By George E. Hall, His Attorney."

Not until April 12, 1915, and nearly a year after the infringement complained of, did the plaintiff bring this suit against this defendant. While this fact has no bearing upon the decision to be reached, it has some bearing upon the inferences to be drawn as affecting the equities of the case, taken in connection with other facts bearing upon this feature of it.

Before discussing the law applicable to facts, it is necessary to now rule upon the question of the admissibility of the receipt above quoted,

which was offered as a bar to a recovery in this action, having been pleaded as a defense in the answer. The fact that it was pleaded in the answer does not of itself make it admissible. It would not be contended by counsel, I apprehend, that if A. was suing B. in a state court for violation of a personal right, that a receipt in full in an action between A. and C. for the violation of a personal right, even of the same kind and character, offered as a bar to a recovery, would be admissible. Is there any rule of evidence peculiar to copyrights which would change the ruling in other cases?

In Beifeld v. Dodge Pub. Co. (C. C.) 198 Fed. 658, Judge Ward, in a suit for infringement of a copyright on a painting sold to plaintiff and copyrighted in his name, excluded correspondence between the artist and a third party, as to the publication of a sketch of the picture from which defendant's copies were printed, because relating to transactions between third persons.

The rules of evidence in copyright cases are the same as in other cases (16 Cyc. 382, 821), and I am unable to find any authority to the contrary, and so the receipt, for the purpose for which it was offered—i. e., to defeat the action—is excluded, but it may be admitted as bearing upon the equities between the parties.

Having thus disposed of the receipt, let us now discuss the defense set forth that the photograph was not copyrightable.

[2] Prior to 1865 it was held that a photograph was not a "print, cut or engraving," within the meaning of the earlier law, and was not therefore a proper subject of copyright. Congress, however, in 1865, extended copyright protection to negatives and photographs by expressly including them among the articles for which copyright was provided. Act March 3, 1865, c. 126, 13 Stat. 540. This express designation of photographs has been continued in all subsequent statutes. Act July 8, 1870, c. 230, § 86, 16 Stat. 212 (R. S. § 4952); Act March 3, 1891, c. 565, 26 Stat. 1107; Act Jan. 7, 1904, c. 2, 33 Stat. 4; Act March 3, 1905, c. 1432, 33 Stat. 1000. Although it was questioned whether a photographer is an author, and a photograph a writing, within the constitutional provision under which copyrights may be granted, the constitutionality of the act was sustained. Thornton v. Schreiber, 124 U. S. 612, 8 Sup. Ct. 618, 31 L. Ed. 577; Burrow-Giles Lith. Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349; Harper v. Kalem Co., 169 Fed. 61, 94 C. C. A. 429.

Accordingly, since the act of 1865, photographs have been, and now are, copyrightable as such, and photographers have frequently been protected in the enjoyment of a copyright in their photographic productions. Thornton v. Schreiber, supra. The basis and justification of such copyrights is the undeniable fact that a photograph may embody original work and artistic skill, and be in fact an artistic production, the result of original intellectual conception on the part of its author. Pagano v. Chas. Beseler Co. (D. C.) 234 Fed. 963; Gross v. Seligman, 212 Fed. 930, 129 C. C. A. 450; Bamforth v. Douglass Post Card Co. (C. C.) 158 Fed. 355. The fact that the photographer arranged the light, the grouping, the posing, and other details of a photograph, so as to produce an artistic and pleasing picture, is sufficient to sustain

a copyright for such photograph. Burrow-Giles Lith. Co. v. Sarony, supra; Pagano v. Beseler Co., supra.

Under the facts found and the law, which is clear and explicit, the photograph here under discussion was clearly copyrightable.

The material allegations of the bill have been satisfactorily established by competent evidence to show, that under the decisions of the cases cited, the plaintiff had a valid copyright, and was the lawful owner of the copyright secured upon the photograph taken of the group entitled "N. H. H. S. 1914."

Further facts set forth in the answer by way of defense suggest that the defendant claims that the property right in this photograph belonged to the high school class. This would be true, provided the committee of the high school and the plaintiff had entered into a contract whereby the high school committee was to pay the photographer a fixed price for his services. In such an event the defense pleaded would avail the defendant, but from the evidence no such situation is disclosed. On the contrary, the proof is conclusive that the plaintiff was to take the group picture and charge each individual who saw fit to make a purchase of him $1.50 per photograph. Hence there is nothing consistent in these facts with the contention that the property right in the photograph belonged to the high school class or to the committee representing it.

Where the photographer takes the portrait for the sitter under employment by the latter, it is the implied agreement that the property in the portrait is in the sitter, and neither the photographer nor a stranger has a right to print or make copies without permission from the sitter. Moore v. Rugg, 44 Minn. 28, 46 N. W. 141, 9 L. R. A. 58, 20 Am. St. Rep. 539. Where, however, the photograph is taken at the expense of the photographer and for his benefit, the sitter loses control of the disposition of the pictures, and the property right is in the photographer. Press Pub. Co. v. Falk (C. C.) 59 Fed. 324. So here, no other conclusion is possible, under the evidence, save the one here reached, that the plaintiff was the lawful owner of the right in the photograph, bound only to sell each photograph at a price not to exceed $1.50 to each member of the class desiring to purchase one. By no possible stretch of the evidence could it be said that the class had or owned the right in the photograph.

[3] As to the next defense set forth in the answer, but little need be said in view of the testimony. It is alleged that the defendant was a joint offender with the Stoddard Engraving Company and Fenton & Krooner, individually and doing business under the name and style of the New Haven Printing Company. The doctrine of contributory infringer is not in the least applicable, in view of the testimony and finding of facts. In order that the defendant might successfully avail itself of this defense, it would have to appear from the evidence that, at the time of the transactions between the Stoddard Engraving Company and the New Haven Printing Company, the defendant had knowledge of the arrangements and participated in them, sanctioned the violation of the plaintiff's rights, and that its violation of the plaintiff's rights was part of that transaction. Harper v. Shoppell (C.

C.) 28 Fed. 615. Of course, it is manifest that such was not the case; but, on the contrary, the defendant was in ignorance of that transaction, and had no knowledge of it.

[4] And as a last defense the defendant pleads, and the court finds as a fact, that its infringement was entirely innocent. Under the law, is that a defense? The law is decisive and clear on this point, and rules against the defense, for it has been repeatedly held that ignorance of a copyright, or honest intention, affords no defense to an action for infringement.

In Morrison v. Pettibone (C. C.) 87 Fed. 330, at page 332, the court said:

"The authorities are clear that the question of knowledge or intent does not enter into consideration upon the issue of infringement."

In Stern v. Jerome H. Remick & Co. (C. C.) 175 Fed. 282, Judge Hand said:

"It is not necessary that the defendant should have intended to violate the copyright of the plaintiff. He had means of knowledge from the copyright office that the song had been in fact copyrighted; and he, like any one else, took his chances when he published the song without any inquiry."

Judge Hollister, in Meccano v. Wagner (D. C.) 234 Fed. 912, at page 921, said:

"Intention is held to be immaterial, if infringement otherwise appears."

The author's property is absolute when perfected by copyright, and the intent or purpose of an invasion is nowhere made an excuse for it.

The defenses pleaded being of no avail, in view of the law and evidence, the plaintiff is entitled to a judgment, and section 25 of the statute provides in this connection:

"That if any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

"(a) To an injunction restraining such infringement;

"(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, * * * but in case of a newspaper reproduction of a copyrighted photograph such damages shall not exceed the sum of two hundred dollars nor be less than the sum of fifty dollars." Comp. St. 1916, § 9546.

In deciding the amount to be awarded, the court should take into consideration all the facts and circumstances of the case. Here we have an innocent infringement, for which suit was not brought for nearly a year, and after a substantial settlement for the real damage done the plaintiff, which was the negligible sale of the original photograph, and while the court would not be permitted by law to speculate as to the profit the plaintiff would have enjoyed, had he been so successful as to sell one copy to each member of the class, it is a fair conclusion that the printing in the Sunday edition of the New Haven Union of the class picture did not cost the plaintiff the loss of a single sale of the original photograph, especially when one carefully examines a copy of the newspaper containing the picture. But Congress has seen fit to fix the minimum recovery at $50, below which this court cannot assess the damages, on the theory, presumably, that proof of the actual dam-

age would be very difficult, if not impossible, but that always some damage would result from such an infringement, which would not and could not be less than $50. The law of the case is with the plaintiff, the equities with the defendant, and the equities justify the court in giving every consideration possible to the defendant in deciding upon the amount the plaintiff may recover.

The plaintiff is entitled to an injunction, and it may issue; but, in view of the highly technical character of the infringement, and for the reasons above expressed, I am constrained to order that the plaintiff may recover judgment for $50, without costs.

Ordered accordingly.