SNOW v. LAIRD et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

No. 624.

1. COPYRIGHT—ACTION FOR INFRINGEMENT—EVIDENCE.

In an action to recover the statutory penalty for infringement of a copyright, an allegation that plaintiff is the author, designer, and proprietor of a copyrighted photograph, which was copied by defendant, is not sustained by proof that plaintiff caused an alteration to be made by etching in a negative from which photographs had previously been printed and sold, and had thus become public property, and then caused the picture printed from the altered negative to be copyrighted. If the altered picture was subject to copyright, it was rendered so solely by the change made therein, which was not the product of photography, but of the etching, which is a different art.

2. SAME—VALIDITY—COLORABLE ALTERATION IN PHOTOGRAPH.

Where a photograph has become public property by being placed in the market and sold, the proprietor cannot obtain a valid copyright thereon

by making a slight and merely colorable change therein by an alteration of the negative from which it is printed.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This action was brought by the plaintiff in error, Blanche L. Snow, "for her own benefit and the benefit of the United States," against Fred C. Laird and William C. Lee, co-partners under the firm name of Laird & Lee, but, Laird having left the firm and the country, the action is practically against Lee alone. The substance of the declaration is that the plaintiff, being on the 20th day of January, 1894, a citizen of the United States, and a resident of Chicago, "was the author, inventor, designer, and proprietor of a photograph and negative thereof called 'Javanese Bride and Groom, B. L. Snow, Chicago, Ill., 1894,'" and obtained a copyright thereon, of which she gave notice by inscribing on the face or front of every copy of the photograph published by her the following words: "Copyright, 1894, by B. L. Snow"; that the defendants, "well knowing the premises, and not having obtained her consent in writing, signed in the presence of two or more witnesses," did, on the 19th day of March, 1894, and at various times since, "print and publish and offer for sale, and have now in their possession, printed, and published, and offered for sale, a large number, to wit, thirty thousand copies of said copyrighted photograph so printed, published, and offered for sale, without the consent of the plaintiff, contrary to the form of the statute in such cases made and provided; whereby, and by force of said statute of the United States (chapter 565, § 4965, Supp. Rev. St. U. S. p. 953), an action has accrued to the plaintiff to demand the sum of one dollar for each of said thirty thousand copies of said copyrighted photograph, yet," etc. The defendants pleaded not guilty. On the evidence adduced the court directed a verdict for the defendants, and gave judgment accordingly. The assignment of error contains seven specifications, of which the last only, that the court erred in directing a verdict for the defendants, presents any question. See Patting v. Coal Co. (this term) 98 Fed. 811.

The evidence shows that the plaintiff is a photographer; that late in the fall of 1893 she posed, draped, and photographed a number of subjects on the Midway Plaisance of the World's Fair, and down to February 1, 1894, exposed copies thereof for sale without copyright. This she did through a canvasser, Inez C. Philbeck, upon whom she imposed no restriction, except that she should not sell to publishers; but of that restriction the defendants had no notice, and on January 24, 1894, the defendant Lee bought of a woman who came to his office and claimed to be B. L. Snow a photograph, which is in the record as Exhibit 1, on the back of which is written, "Javanese Bride and Groom." The plaintiff testified that she never saw either of the defendants. The photograph shows a Javanese youth in fanciful dress, prone upon cushions on the floor, with head resting upon his right hand, and left arm extended down his body, a gentleman's umbrella in front of him, and a young Javanese woman kneeling behind and leaning over him in apparent admiration, to which the young man, with face averted, responds with a half amused look, shading into a scowl. Shortly before January 20, 1894, the plaintiff caused to be etched into the negative "of this photograph" "a cane in the left hand of the reclining male figure," in a position nearly, but not quite, parallel with the umbrella below; but what artistic or utilitarian propriety there could have been in supplying the young man with a cane in addition to the umbrella is not explained. On pictures printed from the negative so etched, and upon other pictures produced in like manner from negatives slightly changed by etching, the plaintiff proceeded on the date last named to obtain copyrights, and having obtained the proper certificate from the librarian of congress, caused to be etched in the negative of each, so as to show on the face of the pictures produced therefrom, the words, "Copyright, 1894, by B. L. Snow." The right to produce the picture now in question seems to have been transferred by the plaintiff to the Werner Company, though upon what terms or conditions does not appear, and that company employed A. Zeese & Co., engravers, to make half-tone plates thereof. The defendant Lee, having placed in the hands of one of his employés the photograph which he had purchased as stated on Jan-

uary 24, 1894, went a few days later to California, whence he did not return until near the end of April. After he had gone, the photograph was sent to Zeese & Co. for the purpose of having a half-tone plate thereof made, but, instead of making a plate of that photograph as directed, they sent to Laird & Lee a half-tone negative of the etched picture, first erasing therefrom the words indicating the copyright. The erasure was so complete as to leave the words illegible except under a microscope, and unnoticeable unless attention was directed to them. The defendants had no knowledge of the copyright, and used the plate so obtained without having observed that it was not an accurate representation of the photograph which they had purchased. Between January 20 and July 20, 1894, Isaac N. Snow, the husband and representative of the plaintiff, called upon the defendant Lee, and, in response to inquiry on the subject, was told that the firm had between 11,000 and 12,000 copies of Art Portfolio Series, Part 6 (each of which contained a copy of the copyrighted picture), and would furnish them at four and one-half cents per copy,—would furnish 10,000 copies at once. A sample copy, which appears as an exhibit in the record, was then delivered to Snow.

W. Clyde Jones, for plaintiff in error.

Amos C. Miller, for defendants in error.

Before WOODS, Circuit Judge, and BUNN and ALLEN, District Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The evidence does not show that the plaintiff purposely entrapped the defendants into the use of the copyrighted picture, instead of the purchased photograph which they had acquired an unrestricted right to reproduce. That they were entrapped, and were innocent of intentional wrong, is clear, and, while the chief blame seems to belong to the engravers, Zeese & Co., yet the plaintiff contributed to the result—made it possible—by taking a copyright on the photograph so slightly changed that the difference was likely to be overlooked; and her attempt, under the circumstances, to exact of the defendants the statutory penalty of one dollar for each copy of the picture printed by them, or found in their possession, is apparently unconscionable, and should be allowed to succeed only upon strict proof. That the statute is a penal one does not admit of discussion. Thornton v. Schreiber, 124 U. S. 612, 8 Sup. Ct. 618, 31 L. Ed. 577. The court below seems to have considered that the defendants, "being entirely innocent of any intention to appropriate a copyrighted article, but, on the contrary, acting upon a photograph which was furnished them by the plaintiff or her agent, and put out and announced for the public," were not, under the circumstances, responsible. Whether that is a proper construction of the statute we need not determine, but the declaration, it is to be observed, was drawn on that theory, it being alleged in effect that the defendants knowingly infringed the copyright. Of that averment there is not only no evidence; the contrary is demonstrated. In another and more important particular there seems to be a lack of evidence, or rather a material variance between the averment and the proof. Copyright upon a photograph is alleged; but the picture in evidence, in so far as it differs from the photograph first produced and made public property, is an etching, and not a photograph. The original picture was a photograph, and represented an

actual subject, of which the plaintiff was the designer or author. The copyrighted picture represents nothing that ever had an objective existence. If the cane represented ever existed, it was no part of the scene or group represented by the other parts of the picture. It was not in the hand of the young man when, with the other parts of the design, he was photographed. So far as the evidence shows, it is an ideal cane, which was made objective and capable of being photographed by being etched upon or into the negative plate of the original photograph; but the photographs produced by the use of a negative are not photographs of the negative, but of the original objects, the images of which by means of the negative are made reproducible. Photographic negatives are produced by processes totally unlike etching. Knight, Am. Mech. Dict. titles "Etching" and "Photography." Etching is a distinct art, much older than photography, and, if etching upon a negative has become a recognized part of the photographic art, the proof does not show it, and the fact is not one of which the court will take judicial cognizance. If, under section 4952, it was competent for the plaintiff to have taken a copyright upon the etched plate as a negative, the infringement thereof must have consisted in duplicating the plate; but she obtained a copyright upon the picture, calling it a "photograph," and not upon the negative; and in so far as the picture differs from the original photograph it is not, strictly speaking, a photograph; and if, in any sense, it is a work of art, the skill was in the etching of the cane into the negative. That done, the subsequent printing of the picture was mechanical or manual merely, and the result not copyrightable. See Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349. The averment that the plaintiff was the author, designer, and proprietor of the picture is not proven. She was the designer or author, and presumably the proprietor, of the original photograph, but in respect to the copyrighted picture the evidence is that, "after producing the photograph, * * * she caused to be etched into the negative . * * * a cane in the left hand of the reclining male figure," and that "the only two prints made from said negative" she forwarded to the librarian of congress for the purpose of obtaining the copyright. This may mean that she directed the cane to be put in the left hand of the reclining figure, but of what style and size it should be, in what position it should appear to be held, and whether it should represent an actual or an ideal object, or, in other words, all that could be deemed to be of artistic merit in the work, so far as appears, the etcher was left to determine. See, in the case last cited above, comments on Nottage v. Jackson, 11 Q. B. Div. 627. Other than as stated, there is no evidence that the plaintiff was ever the proprietor of the etched plate, or of the pictures produced therefrom. The evidence is more direct that the Werner Company in some way had become the proprietor.

The final consideration, however, on which the decision below was based is perhaps the most satisfactory, namely, that, having given the original photograph to the public, it was beyond the power of the plaintiff to obtain a valid copyright by so slight an alter-

ation as that which was made. The change was colorable merely, was not made in good faith for the purpose of producing a new work of art, but in an attempt to reclaim what had been voluntarily and irrevocably surrendered. To declare that by such a change a photograph, engraving, or other style of picture, which has become public property, may be made a proper subject of copyright, would be to encourage deceit and extortion in a manner impressively illustrated by the facts of this record. Infringement of a valid copyright cannot be evaded by slight and merely colorable changes in a picture, and, as said by the court below, the rule must work both ways. The judgment below is affirmed.