MIFFLIN et al. v. DUTTON et al.

SAME v. R. H. WHITE CO.

(Circuit Court of Appeals, First Circuit. January 16, 1902).

Nos. 387, 388.

1. COPYRIGHT—SUBSEQUENT PUBLICATION—NOTICE—ABANDONMENT.

When the author of a literary work, who, after a portion has been published in a magazine without copyright, publishes it in book form, taking the proper steps to copyright the book in his own name, c n-sents to the subsequent publication in such magazine of the portion which had not been published therein, without other notice of copyright than a general notice of copyright by the publishers, such subsequent publication effects, under the statute, an abandonment of the author's copyright.

2. SAME—SECOND COPYRIGHT.

Where a literary work has been published serially with the consent of the author, and a copyright secured in the name of the publisher, whether it be for the publisher alone, or in the interests of the publisher and the author, the author cannot subsequently copyright the work; and if, subsequently, the auth r republishes it in book form, with a notice of a copyright in his own name, such republication, with such a notice, effects, under the statute, an abandonment of the copyright.

Appeals from the Circuit Court of the United States for the District of Massachusetts.

See 107 Fed. 708.

Samuel J. Elder (Elder, Wait & Whitman, on the brief), for appellants.

Andrew Gilhooly, for appellees.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge. The first of these appeals originated in a bill to protect an alleged copyright in a portion of "The Minister's Wooing," and the second in a portion of "The Professor at the Breakfast Table." In each there was a demurrer, a decree dismissing the bill with costs, and an appeal. The alleged copyrights were taken out under the act of February 3, 1831, c. 16 (4 Stat. 436), and each claims the benefit of a renewal. Some questions are made about the renewals, but we need not consider them.

Twenty-nine of the forty-two chapters of "The Minister's Wooing"

were published in the serial numbers of the Atlantic Monthly, beginning with December, 1858, and ending with October, 1859. In October, 1859, Mrs. Stowe took out a copyright of "The Minister's Wooing" as a whole, and in the book published by her authority a proper notice of this copyright is entered. Subsequent to taking out this copyright, the remaining 13 chapters were published in the November and December numbers of the Atlantic Monthly for the same year. On the page following the title page of these numbers was printed the following: "Entered according to act of congress, in the year 1859, by Ticknor & Fields, in the clerk's office of the district court of the district of Massachusetts." All the magazine publications were with the consent of Mrs. Stowe, under a formal contract between her and the publishers.

The bill does not state whether or not Ticknor & Fields took out a copyright of any kind. The circuit court found that the publication of the first 29 chapters without any copyright abandoned them to the public, in which it was undoubtedly correct. It also found, in substance, that, as the remaining 13 chapters were published with no notice of the copyright except that which we have stated, this, although giving information that somebody had copyrighted something, was not a sufficient notice of a copyright by Mrs. Stowe, even in view of the liberal rulings as to the permissible form of a notice found in Lithographic Co. v. Sarony, 111 U. S. 53, 55, 56, 4 Sup. Ct. 279, 28 L. Ed. 349, and in other cases of like class. We agree with this proposition. But the case goes farther. The notice given by the publishers of the Atlantic Monthly was clearly a notice of a supposed copyright secured by themselves, and it contained nothing to indicate that it was a notice of one taken by Mrs. Stowe. The presumption, therefore, is that it was a notice of a copyright of so much of the Atlantic Monthly as the publishers were entitled to copyright in their own behalf. They could not then copyright "The Minister's Wooing," because it had already been copyrighted, and there cannot be two successive copyrights of the same publication. To permit this would render possible an extension of the statutory period through which a copyright runs, which, of course, the law will not allow. Therefore, on the whole, the just conclusion is that Ticknor & Fields published the November and December numbers of the Atlantic Monthly, not only without any notice of Mrs. Stowe's copyright which was sufficient in law, but only with one which was presumably a notice of a copyright of their own.

With reference to "The Professor at the Breakfast Table," as the learned judge of the circuit court well said, the sequence of the facts is different, but the case is governed by the same principles. Ten of the twelve parts of this work were published in the serial numbers of the Atlantic Monthly, beginning in January, 1859, and ending in October, 1859, without any notice of any copyright. The remaining two parts were published in the following December number, as to which the bill states that a copyright was obtained by Ticknor & Fields, and a notice thereof given on the page following the title page, in the precise form which we have already stated in regard to "The Minister's Wooing." Afterwards, Dr. Holmes pub-

lished the entire work in one volume, containing the following notice: "Entered according to act of congress in the year 1859, by Oliver Wendell Holmes, in the clerk's office of the district court of the district of Massachusetts." In this case there is an allegation that Dr. Holmes took out a copyright in his own behalf, so that the same observations apply even more positively to the notice given by him which we made with reference to that printed by Ticknor & Fields with regard to "The Minister's Wooing"; that is to say, it was a notice of a copyright taken out by him, and not of that taken out by Ticknor & Fields. While, therefore, as already said, we agree with the line of reasoning of the learned judge of the circuit court, we may add the same conclusion as with reference to the other case, that, in the volume published by Dr. Holmes, no notice was given, or intended to be given, of the copyright taken out by Ticknor & Fields.

We ought to observe that the publication by Tichnor & Fields was with the authorization of Dr. Holmes, under a contract with him, so that he is chargeable with what was done by them. We ought also to add that while it is possible that, in some aspects of the law, Tichnor & Fields might have obtained a copyright in behalf of themselves and of Dr. Holmes which would have protected the interests of both, and that thus Ticknor & Fields might have become a trustee of a copyright in behalf of both, yet there is no allegation in the bill to that effect. Therefore, inasmuch as the copyright taken out by Dr. Holmes was insufficient to protect any part of his volume, because the whole had received prior publication, and, as we have said, there cannot be successive copyrights, and inasmuch also as he published the only parts which could be regarded as protected by the prior copyright without giving notice thereof, it necessarily follows that the conclusion of the circuit court that the whole work was, in the end, abandoned to the public, was correct.

In No. 387, Mifflin v. Dutton, the decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellees.

In No. 388, Mifflin v. R. H. White Company, the decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellees.