**UNITED STATES of America,
Plaintiff,**

v.

**Joseph Burton BODIN et al., Defendants.**

**No. CR–74–61.**

United States District Court,
W. D. Oklahoma,
Criminal Division.

May 7, 1974.

Jeff Laird, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Patrick Williams, Tulsa, Okl., W. O. Fields, Norman, Okl., for defendants.

## ORDER ON MOTIONS TO DISMISS INFORMATION BY ALL DEFENDANTS

DAUGHERTY, Chief Judge.

The defendants, Joe Linden Blanton and La Belle, Inc., have filed herein a Motion to Dismiss the Information, which they have erroneously labeled "Motion to Dismiss Indictment". The defendants, Joseph Burton Bodin, William Albert Bodin, Hemisphere Sounds, Inc., Broken Arrow Productions, Inc., have joined in a separate "Motion to Dismiss Information and request for oral argument". The motions are similar in content and only one brief has

been submitted in behalf of all defendants. Therefore, the court will treat the motions together.

In Count 1 of the Information the defendants Joseph Burton Bodin, William Albert Bodin and Joe Linden Blanton are charged with violating 18 U.S.C. § 371 in that they conspired together "to wilfully and for profit infringe the copyright of sound recordings copyrighted pursuant to the provisions of Title 17, United States Code, by manufacturing and selling copies of such recordings without authorization of the copyright owners, in violation of Sections 101(e) and 104 of Title 17, United States Code."

In Counts 2 through 27 all defendants are jointly charged with particular violations of 17 U.S.C. §§ 101(e) and 104. In short the defendants are charged with what is now commonly referred to as "tape piracy" i. e. they duplicated and sold without authorization recordings of performances by major musical artists.

In 1971 the Federal Copyright Statutes were amended to permit federal copyright protection of sound recordings. Pub.L. 92–140, 85 Stat. 391. Section 3 of the Amendment, however, provides that a sound recording is eligible for copyright protection only if the sound recording is fixed and first published after February 15, 1972, and before January 1, 1975. In order to receive federal copyright protection a sound recording must be published with a Notice of Copyright, 17 U.S.C. § 10. Such notice must be placed on the surface of reproductions of the sound recording or on the label or container in such manner and location as to give reasonable notice of the claim of Copyright. 17 U.S.C. § 20. The notice must consist of the symbol ℗ (the letter P in a circle), the year of first publication of the sound recording and the name or recognizable abbreviation of the name of the copyright owner. 17 U.S.C. § 19. The act of publication with the prescribed copyright notice secures copyright protection. 17 U.S.C. § 10. The unauthorized manufacture, use or sale of a copy of a sound recording constitutes an infringement of the copyrighted work. 17 U.S.C. § 101(e). If the infringement is wilful and for profit the person responsible is subject to the criminal sanctions of 17 U.S.C. § 104 which imposes a misdemeanor penalty "of imprisonment for not exceeding one year or by a fine of not less than $100, no more than $1000, or both" upon conviction.

The defendants contend that the amended statute relied upon by the plaintiff, to-wit 17 U.S.C. §§ 101(e) and 104 are unconstitutional. Their attack is two-pronged. First, they rely upon the first amendment. They assert that provisions of the 1971 amendment are "unconstitutional as a denial of freedom of expression and tends to destroy the public right to enjoy the arts promoted by individuals." We do not find any denial of freedom of expression to the "tape pirate". What he seeks is not the freedom to express himself artistically or otherwise, but the right to make exact and identical copies of sound recordings produced by others. We fail to see as any protected first amendment right a privilege to usurp the benefits of the creative and artistic talent, technical skills, and investment necessary to produce a single long-playing record of a musical performance. In commenting upon similar claims of a "tape pirate" in Duchess Music Corp. v. Stern, 458 F.2d 1305 (CA9 1972), the court said:

> "Rosner may, of course, record appellants' songs, when she hires musicians, artists, and technicians. Instead, she steals the genius and talent of others. She deceives others into thinking that her tapes represent her own work. She has no 'right to copy'."
>
> 458 F.2d at 1311.

The statute, as amended, places no impediment to the defendants collecting their own talent and technicians to imitate on a new tape or record a performance embodied on the protected sound recording. There is here no restraint placed on the use of an idea or concept.

Art. I, § 8, Cl. 8, of the Constitution gives to Congress the power—

"To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries. . . ."

In Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) the Supreme Court considered the relationship between the federal copyright law prior to the 1971 amendment and a California statute prohibiting the "piracy" of sound recordings by copying without permission of the recording company. The petitioners in that case were charged with copying recordings fixed prior to February 15, 1972, in violation of the California statute. The court found that the state statute was not void under the Supremacy Clause as there was no conflict between the 1971 federal statute and the state law because Congress had not treated with sound recordings fixed prior to February 15, 1972. The court, however, left no doubt that Congress could have afforded the copyright protection which the state had provided. It declared:

"By Art. I, § 8, Cl. 8, of the Constitution, the States granted to Congress the power to protect the 'Writings' of 'Authors.' These terms have not been construed in their narrow literal sense but, rather, with the reach necessary to reflect the broad scope of constitutional principles. While an 'author' may be viewed as an individual who writes an original composition, the term, in its constitutional sense, has been construed to mean an 'originator,' 'he to whom anything owes its origin.' Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58, 4 S.Ct. 279, 28 L.Ed. 349 (1884). Similarly, although the word 'writings' might be limited to script or printed material, it may be interpreted to include any physical rendering of the fruits of creative intellectual or aesthetic labor. Ibid.; Trade-Mark Cases, 100 U.S. 82, 94, 25 L.Ed. 550 (1879). Thus, recordings of artistic performances may be within the reach of Clause 8." 412 U.S. at 561.

■■ The defendants in their challenge to the constitutional validity of the amended statutes next place reliance upon the 14th Amendment to the Constitution. Obviously, their reliance is misplaced as the 14th Amendment inhibits only state action and does not apply to Congress. We will, however, treat their due process contention:

"The lack of adequate provisions for compulsory licensing under 17 U.S.C. § 1(f) for sound recordings while providing the same for 17 U.S.C. § 101(e) for musical compositions is a direct denial of due process which discriminates between the rights of a recording company and of legitimate sound recording distributors."

as a claim for relief under the 5th Amendment. Persuasive to us is the reasoning of the court in the case of Shaab v. Kleindienst, 345 F.Supp. 589 (D.C.D.C.1972). There the plaintiff in seeking to enjoin the criminal provisions of the copyright act advanced the same argument as these defendants. In affirming the constitutionality of the statute, the court said:

"Technical advances, unknown and unanticipated in the time of our founding fathers, are the basis for the sound recording industry. The copyright clause of the Constitution must be interpreted broadly to provide protection for this method of fixing creative works in tangible form.

. . . . . .

"The 1909 revision of the copyright clause contains a compulsory licensing provision with respect to copyrighted musical compositions. There is no such provision in 92–140. The Court finds this distinction between the two provisions is rational and reasonable. The provision for compulsory licensing of copyrighted musical compositions promotes the arts by permitting numerous artistic interpretations of a single written composition.

"If Congress in 92–140 had extended the compulsory licensing provisions to call for licensing of companies that wish to make and sell identical versions of the recorded compositions, these public benefits would not result. Consumer choices would not be broadened since identical interpretations would be supplied first by the originator and later by the licensee. Equally important, competition and the creative aspects of the industry would be impaired since established recording firms would be discouraged from investing in new arrangements and performers, if they were compelled to license their successful interpretations to those desiring to take advantage of the originator's initiative and to add nothing themselves." 345 F.Supp. at 590.

The real thrust of defendants' argument is that the Act now restricts competition in the record industry and grants a monopoly to the record manufacturer which is not in the public interest and more particularly the interest of independent sound recording distributors. This policy argument, however, must be addressed to the Congress and not to this court. Certainly by definition a copyright provides a monopoly over certain expression, but as the Supreme Court has pointed out:

"[W]hether any specific category of 'Writings' is to be brought within the purview of the federal statutory scheme is left to the discretion of the Congress. The history of federal copyright statutes indicates that the congressional determination to consider specific classes of writings is dependent, not only on the character of the writing, but also on the commercial importance of the product to the national economy. As our technology has expanded the means available for creative activity and has provided economical means for reproducing manifestations of such activity, new areas of federal protection have been initiated." Goldstein v. California, supra at 562.

We find no merit in the defendants' challenge to the constitutionality of the statutes.

The defendants further move the court to dismiss each of the counts of the Information for the reason that the charges are vague and ambiguous and do not state sufficient facts to constitute an offense against the laws of the United States. The crime of "record piracy" in violation of 17 U.S.C. §§ 101(e) and 104 consists of four essential elements: (1) a copyrighted sound recording is manufactured, used or sold; (2) without authorization; (3) wilfully and (4) for profit. The defendants suggest that it is essential that the government allege that the compulsory license provisions of § 101(e) have not been complied with. The 1971 amendment to the Copyright Act retains compulsory licensing of musical compositions but it does not extend compulsory licensing to sound recordings. Shaab v. Kleindienst, supra. The reference in § 101(e) to the compulsory license provisions of the Act pertains only to the use of a copyrighted musical composition, and not to the duplication of protected sound recordings. In fact, the activities of a "tape pirate" have never fallen within the ambit of the compulsory license provisions of 17 U.S. C. §§ 1(e) and 101(e). Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 285 (CA10, 1974).

The Information is a plain, concise and definite written statement of the essential facts charged as required by Rule 7(c), Federal Rules of Criminal Procedure. In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1930) the Supreme Court stated:

"The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and suffi-

ciently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

The test of the sufficiency of an indictment or information in this circuit is as follows:

"Imperfections of form that are not prejudicial are disregarded and common sense prevails over technicalities. The sufficiency of indictment must be determined on the basis of practical rather than technical considerations and the validity of attacks on them must be considered from a broad and enlightened standpoint of right reason rather than from a narrow view of technicality and hairsplitting." Robbins v. United States, 476 F.2d 26, 30 (CA10 1973).

■ In Count 1 of the Information the object of the conspiracy is specifically defined and 6 overt acts to accomplish the same are set forth. This count sufficiently advises the defendants, Joseph Burton Bodin, William Albert Bodin and Joe Linden Blanton of what they must be prepared to meet. For each of Counts 2 through 27 it is respectively alleged that a particular copyrighted sound recording identified by name, artist, copyright owner, and registration number was manufactured and sold by the defendants. Each such sound recording is alleged to have been first fixed and published with requisite notice of copyright after February 15, 1972 and duly registered in the United States Copyright Office under the specified registration numbers in Class N, pursuant to the provisions of Title 17, United States Code. It is alleged that such manufacture and sale was done without authorization and wilfully and for profit. Each count of the Information clearly informs the defendants of the precise offense of which they are accused so that they may prepare their defense and so that a judgment thereon will safe-

guard them from a subsequent prosecution for the same offense. No more is required. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953).

The counts of the Information are not duplicitous as claimed by the defendants. It is manifest that the defendants are charged with infringing and conspiring to infringe, copyrighted sound recordings and not the infringement of copyrighted musical compositions. Under the allegations contained in the Information we do not perceive how the defendants could possibly be misled as to the offenses with which they stand charged.

■ The individual defendants have also suggested that the Information is defective because it does not allege the capacity in which they were acting at the time of the alleged violations. They apparently presume in reliance upon a civil case that they would not be criminally responsible if they were acting merely as officers of the corporate defendants. However, 17 U.S.C. § 104 makes it an offense not only to infringe a copyright wilfully and for profit but as well to knowingly and wilfully aid and abet such an infringement. See also 18 U.S.C. § 2. An aider and abettor may be charged and convicted as a principal. Nance v. Baker, 400 F.2d 864 (CA10 1968). See also United States v. Pickens, 465 F.2d 884 (CA10 1972).

■ The defendants Bodin and Hemisphere Sounds, Inc., and Broken Arrow Productions, Inc., also assert that Counts 2 through 27 should be dismissed because the sound recording copyrights allegedly infringed were for various reasons not valid copyrights. This is defensive matter. It is basic that the sufficiency of an Information must be determined solely from the face of the Information; therefore, this court will not attempt to determine the merits of this case by a reference to the facts as they are alleged to be by the defendants in their motion or brief, but will restrict its consideration to the facts properly alleged in each count of the Information.

As our previous discussion indicates the facts alleged are sufficient to meet the required standards.

Accordingly, it is ordered:

1. That the Motion to Dismiss by the defendants, Joseph Burton Bodin, William Albert Bodin, Hemisphere Sounds, Inc., and Broken Arrow Productions, Inc., is denied.

2. The Motion to Dismiss by the defendants, Joe Linden Blanton and La Belle, Inc., is denied.

3. That the request for oral argument by the defendants Joseph Burton Bodin, William Albert Bodin, Hemisphere Sounds, Inc. and Broken Arrow Productions, Inc., is denied.