Art **ROGERS**, Plaintiff,

v.

Jeff **KOONS** and **Sonnabend Gallery, Inc.**, Defendants.

No. 89 Civ. 6707 (CSH).

United States District Court, S.D. New York.

Dec. 13, 1990.

---

**475**

Stecher Jaglom & Prutzman, New York City, for plaintiff; L. Donald Prutzman, Jr., Andrea Galbo, New York City, of counsel.

John B. Koegel, New York City, for Jeff Koons and Sonnabend Gallery, Inc.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff, a professional photographer, brings this action against defendants, a sculptor and an art gallery, for copyright infringement under the Copyright Act, Lanham Act violations, and unfair competition under the laws of New York and California. Plaintiff moves under Rule 56, Fed.R.Civ.P., for summary judgment on his first cause of action for copyright infringement. Defendants cross-move for summary judgment dismissing the complaint.

### Background

The facts are largely undisputed. Plaintiff Art Rogers is a professional photographer resident in California. In 1980 Jim Scanlon, another California resident familiar with Rogers' work, commissioned Rogers to make a photographic portrait of the Scanlons' new litter of eight German Shepherd puppies. Rogers went to the Scanlon home. Rather than attempting to pose the puppies alone, he included Scanlon and his wife Mary, who were photographed sitting on a bench holding the puppies. Rogers succeeded in getting two adults and eight puppies to hold still long enough to produce a charming photograph which Rogers named "Puppies." "Puppies" was published in Rogers' photography column in a local newspaper in 1980. The photograph was exhibited, along with other works by Rogers, at the San Francisco Museum of Modern Art in 1982. In 1984 Rogers licensed "Puppies" along with other works to Museum Graphics, a company that produces and sells notecards and postcards with high quality reproductions of photographs by American photographers, including Ansel Adams. Museum Graphics has produced and distributed the "Puppies" notecard since 1984. A signed print of "Puppies" has been sold to a private collector. In 1989 Rogers licensed the photograph for use in an anthology called "Dog Days." Rogers has stated in an affidavit that he plans to use "Puppies" in a series of hand tinted prints of his works.

Defendant Jeff Koons is a well-known American artist and sculptor resident in New York whose works are exhibited at galleries and museums in the United States and elsewhere and sold to the public. Defendant Sonnabend Gallery represents Koons and serves as his agent in connection with the display and sale of his works. In October 1986 Koons began the process of creating sculptures for what he eventually termed his "Banality Show." His work extended over two years. The exhibition opened at Sonnabend Gallery on November 19, 1988. The exhibition consisted of 20 sculptural works. In Koons' perception, "the subject for the show would be Banality but the message would be a spiri-

tual one. And while being uplifting, the also work would be [sic] critical commentary on conspicuous consumption, greed, and self indulgence." Defendants' Main Brief at 6. All the works were sculptures in various media, including several in "polychromed wood," which is wood painted different colors with oil paint. Each work was produced in an "edition" of three, so that three copies were available for sale to the public. An "artist's proof" of each sculpture was also produced for Koons which he could sell later if he wished.

During the fall and winter of 1986 and throughout 1987 Koons collected material for possible sculptures. He then located and contracted with workshops that could craft the desired materials in the fashion that Koons desired.

At the end of 1987 or in 1988 Koons purchased at least two Museum Graphics notecards displaying Rogers' "Puppies" photograph. These cards were imprinted with Rogers' copyright, although the photograph had not yet been registered. Koons decided to use the photograph for one of the sculptures to be exhibited in the Banality Show. He tore off that portion of the notecard showing the copyright notice and sent the photograph to the Demetz Arts Studio in Italy, with instructions to make a polychromed wood sculptural version of the photograph, a work that Koons instructed Demetz "must be just like photo." Ex. 15 to Koons deposition (notes Koons furnished to Demetz in connection with producing the sculpture). Koons continued to communicate with Demetz, reiterating that the features of the humans and the puppies be reproduced "as per photo." Ex. 16. As to the painting of the sculpture, Koons gave Demetz a chart with an enlarged photocopy of "Puppies" in the center, and on which he noted painting directions in the margin with arrows drawn to various areas of the photograph. Koons instructed Demetz to paint the puppies in shades of "blue," with "variation of light-to-dark as per photo." The man's hair was to be "white with shades of grey as per black and white photo.") Ex. 14.

The end result was a polychromed wood sculpture 42 inches by 62 inches by 37 inches (not including the base which is 32 inches by 67 by 31 inches). Koons called the sculpture "String of Puppies."

Following the display of "String of Puppies" at the Sonnabend Gallery in December 1988, Koons sold the edition of three sculptures to collectors for a total of $367,-000. Two were sold for the price stated by the Gallery of $125,000. The third buyer paid $117,000. Koons retains a fourth "String of Puppies" sculpture at his storage facility.

Rogers learned of the sculpture through Scanlon. A friend of Scanlon's familiar with the notecard called Scanlon and said that the photograph "Puppies" was on the front page of the calendar section of the Sunday Los Angeles Times, but had been "colorized." Scanlon, having obtained and read the article, realized that it was not a tinted version of the photograph "Puppies," but rather was a photograph of Koons' sculpture "String of Puppies," then on exhibition at the Los Angeles Museum of Contemporary Art. Scanlon told Rogers about it.

Rogers registered his photograph "Puppies" with the United States Copyright Office, obtaining registration number VA 352/001. The effective date of the registration is July 6, 1989. The certificate recites a date of first publication in the United States of November 20, 1980.

Rogers filed this action against Koons and Sonnabend Gallery on October 11, 1989.

It is common ground that Koons did not inform Rogers of his intended use of the photograph, and that Rogers had no knowledge of that use until Scanlon informed him.

Rogers now moves for summary judgment on the first cause of action in the complaint, for copyright infringement. Defendants cross-move for summary judgment dismissing all causes of action.

### Discussion

Koons concedes, as he must, that he "used" Rogers' photograph "Puppies" as

"source material" for his sculpture "String of Puppies." Koons prefers to avoid the verb "copied." Semantics do not decide the issue, which is whether or not Koons' conduct constitutes copyright infringement.

Koons says it does not for two principal reasons. First, he argues that Rogers' copyright protection "is strictly limited to the work *as a photograph.*" Main Brief at 21 fn. (emphasis added). At oral argument, Koons' counsel carried that argument to its logical conclusion and contended that any sculptor could "use" or "copy" any copyrighted photograph without incurring liability as an infringer. Secondly, Koons relies upon the doctrine of fair use. I discuss these contentions in turn.

*Use*

Koons' main contention under this heading is that the use he made of the Rogers photograph related only to non-copyrightable elements. Koons relies upon the familiar rule that copyright protection extends only to original acts of expression, so that purely factual information is in the public domain. *See, e.g. Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 979 (2d Cir.1980).

That rule has no meaningful application here. Koons does not articulate what non-protectible factual information he regards himself as having used. It is of course the fact that Mr. and Mrs. Scanlon's German Shepherd produced a litter of eight puppies; that the Scanlons thought the puppies were cute; and that they asked Rogers to photograph them. But the manner in which Rogers arranged his subjects and carried out his photographer's art constitutes a protectible original act of expression, as the certificate issued by the Copyright Office reflects.

Koons' reproduction of the Rogers photograph in sculpture form does not preclude a finding of copyright infringement. The Copyright Act, 17 U.S.C. § 106, confers upon the copyright owner "the exclusive rights to do and to authorize," *inter alia,* the preparation of "derivative works based upon the copyrighted work." § 106(2). The statute defines a "derivative work" as a work "based upon one or more preexist-

ing works, such as [an] ... art reproduction, ... or any other form in which a work may be recast, transformed, or adapted." § 101. Under the plain wording of the statute, Koons' sculpture is a derivative work based upon Rogers' photograph; and Rogers as copyright owner had the exclusive right to authorize derivative work. It is well settled that a photographer's originality in photographic expression is entitled to full copyright protection. *See Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 55, 4 S.Ct. 279, 279–80, 28 L.Ed. 349 (1884).

Koons' effort to limit that protection to the photograph "as a photograph" runs counter to caselaw. In copyright law the medium is not the message, and a change in medium does not preclude infringement. That has long been the rule of this Court and the Second Circuit. In *Falk v. T.P. Howell & Co.,* 37 F. 202 (S.D.N.Y.1988), defendant, a chair manufacturer, copied plaintiff's copyrighted photograph "and stamped a raised figure, like the picture, on the leather of which the bottoms and backs of chairs are made." Judge Coxe cited *Burrow–Giles Co. v. Sarony, supra,* for the proposition that a photograph may be the subject of a copyright, and then said:

> The only question is, do the defendants infringe? That their design is copied directly from the copyrighted photograph is not denied, but it is urged that infringement is avoided, because it is larger than the photograph, and is stamped on leather, and is intended for the bottom or back of a chair. It is thought that this proposition cannot be maintained. Differences which relate merely to size and material are not important.

The Second Circuit cited that language with approval in *King Features Syndicate v. Fleischer,* 299 F. 533 (2d Cir.1924), where the defendant copied plaintiff's cartoon character for the manufacture of a toy. The court of appeals said generally at 535:

> We do not think it avoids the infringement of the copyright to take the substance or idea, and produce it through a different medium, and picturing in shape

and details insufficient imitation to make a true copy of the character thought of by the appellant's employee. Doing this is omitting the work of the artisan, but appropriating the genius of the artist.

After quoting the indicated language from *Falk*, the court of appeals then observed at 536:

> A piece of statuary may be infringed by the picture of the statuary for the Copyright Act secured to the author the original and natural rights, and it is the intendment of the law of copyrights that they shall have a liberal construction in order to give effect to what may be considered as an inherent right of the author in his work.[1]

The Second Circuit reached the same result without discussion in *Fleischer Studios, Inc. v. Ralph A. Freundlich, Inc.*, 73 F.2d 276 (2d Cir.1934), where the defendant manufactured dolls copying the plaintiff's copyrighted book of cartoons.

These cases are closely analogous to the case at bar. Three-dimensional toys or dolls copied from two-dimensional cartoons are the functional equivalents of a three-dimensional sculpture copied from a two-dimensional photograph. Such cases are consistent with the general principle stated in 1 M. and D. Nimmer, *Nimmer on Copyright*, (1989) § 2.08(E) at 2–123 to 2–124, where the authors state that it is

> fundamental that copyright in a work protects against unauthorized copying not only in the original medium in which the work was produced, but also in any one medium as well.... The fact that a work in one medium has been copied from a work in another medium does not render it any less a "copy".

By way of contrast, Koons cites no authority for his blanket proposition that a sculpture cannot in law infringe a copyrighted photograph. That proposition seems to me contrary to the Copyright Act and these cases construing the statute, and I reject it.

Koons argues that Rogers must show substantial similarity between the photograph and the sculpture to sustain a claim of infringement, and that the differences in size, texture and color preclude such a finding. This is really the discredited "substitute medium" argument in a different form. Rogers says that where direct copying is conceded, substantial similarity drops out of the analysis. He cites *Illinois Bell Telephone v. Haines & Co., Inc.* 905 F.2d 1081, 1086 (7th Cir.1990) ("To satisfy the copying element of infringement, direct evidence of copying will suffice.... Establishing substantial similarity is necessary only when direct evidence of copying is unavailable"), and *Rural Telephone Service Company, Inc. v. Feist Publications, Inc.*, 663 F.Supp. 214, 218 (D.Kan.1987) ("The 'substantial similarity' test is used when there is no direct evidence of copying.") For that proposition the district court in *Rural Telephone* cited *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911–12 (2d Cir.1980). I do not find that particular rule clearly stated in *Durham Industries*, but the case does demonstrate that the present test of substantial similarity in the Second Circuit is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *See* discussion at 630 F.2d at 911–12 (*citing and quoting Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966)).

There is no question in the case at bar that "an average lay observer" would recognize the sculpture "String of Puppies" as "having been appropriated from" the photograph "Puppies." Questions of size and color aside, the sculpture is as exact a copy of the photograph as Koons' hired artisans could fashion, which is precisely what Koons told them to do. Indeed, Scanlon's friend, having observed a newspaper picture of the sculpture, assumed that it was Rogers' photograph, having been "colorized."

Koons' copying of Rogers' photograph constitutes copyright infringement, unless Koons' conduct may be characterized as "fair use."

---

1. The case at bar presents the converse proposition. If a picture of a piece of statuary may infringe the sculptor's copyright, so may sculpture infringe a photographer's copyright.

*Fair Use*

■ Koons asserts that even if his use of Rogers' photograph constituted unauthorized copying, it is a fair use and therefore not infringing.

The fair use doctrine, which is incorporated into the 1976 Copyright Act, has been considered in three recent Supreme Court decisions: *Stewart v. Abend,* — U.S. —, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990); *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 85 L.Ed.2d 588 (1985); and *Sony Corp. of America v. Universal Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). The fair use doctrine evolved in response to the rigid and inflexible common law rule that the author's property in his intellectual creation was absolute until he voluntarily parted with it. *Stewart,* 110 S.Ct. at 1768. The doctrine is an "equitable rule of reason", *Sony,* 464 U.S. at 448, 104 S.Ct. at 792, which "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Stewart,* 110 S.Ct. at 1768 (*citing and quoting Iowa State University Research Foundation, Inc. v. American Broadcasting Companies,* 621 F.2d 57, 60 (2d Cir. 1980)).

17 U.S.C. § 107 provides "that fair use of a copyrighted work ... is not an infringement of copyright." The statute attempts no generally applicable definition of fair use, since the doctrine, an equitable rule of reason, is fact-oriented. But Congress did provide in § 107 examples of fair use, and factors to be considered in determining whether a particular case falls within the doctrine. The examples are copying "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." The four non-exclusive factors the courts must consider in determining whether an unauthorized use is not infringing are:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

Koons' sculpture does not fall within any statutory examples. There was a faint suggestion in his argument that the sculpture, together with the other works in the "Banality Show, were intended to comment satirically upon contemporary values. But I construe the words "criticism" and "comment" as used in § 107 to refer to such usage specifically addressed to the copyrighted work. Koons' sculpture does not criticize or comment upon Rogers' photograph. It simply appropriates it.

Turning from the statutory examples to § 107's four factors, the first involves consideration of whether Koons' use of the Rogers photograph "is of a commercial nature or is for non-profit educational purposes ..." Clearly Koons' sculpture is not for "non-profit educational purposes." But I do not think Congress intended that phrase to embrace all non-commercial use. Use of a copyrighted work by a church, synagogue or mosque for purposes of spiritual inspiration would not, I should think, be regarded as use "of a commercial nature." However, the Koons sculpture does not fall in that category either; and, notwithstanding its unquestioned status as a work of art, the sculpture is not unsullied by considerations of commerce. Koons actively markets his sculptures, by displaying them at galleries and through published advertisements, and they bring considerable sums from the public, as the sale of the "String of Puppies" sculptures indicates. In *Stewart v. Abend* the infringing use was a motion picture based upon a copyrighted story. The re-release of the motion picture earned the defendants $12 million. The Ninth Circuit rejected defendants' "bold proposition that a work's popularity may make its value educational rather than commercial. Clearly, the defendants' 'use is of a commercial nature.'" *Abend v. MCA, Inc.,* 863 F.2d 1465, 1481 (2d Cir.

1988). The Supreme Court approved that conclusion at 110 S.Ct. 1768:

[Defendants] asserted before the Court of Appeals that their use was educational rather than commercial. The Court of Appeals found nothing in the record to support this assertion, nor do we.

In the case at bar, given the plain wording of the statute and this recent construction, I conclude that Koons' use of the Rogers photograph was of a commercial nature.

As to the second factor, the Supreme Court in *Stewart* approved the observation of the Ninth Circuit that "[a] use is less likely to be deemed fair when the copyrighted work is a creative product," 863 F.2d at 1481, adding: "In general, fair use is more likely to be found in factual works than that in fictional works." 110 S.Ct. at 1769. Rogers' photograph is a creative work, more closely akin to fiction.

The third factor considers the amount and substantiality of the portion used in relation to the copyrighted work as a whole. Koons appropriated the entire photograph.

The fourth factor, the effect of the use upon the potential market for or value of the copyrighted work, is regarded as "the most important, and indeed, central fair use factor." *Stewart* at 1769, quoting the *Nimmer* text. Koons argues that this factor militates in favor of fair use because his sculpture does not compete directly in the market place with Rogers' photograph. But it need not do so. In *Stewart* the owners of the infringing motion picture argued that the film would not prejudice the story's sale in book form, and that the re-release of the film may even "have promoted sales of the underlying story in the book medium." 863 F.2d at 1482. That argument failed because, in the Ninth Circuit's view, the film distributors' commercial use of a copyrighted story "adversely affects the story owner's adaptation rights." *Ibid.* The Supreme Court accepted that conclusion as well, stating 110 S.Ct. at 1769:

The record supports the Court of Appeals' conclusion that re-release of the film impinged on the ability to market new versions of the story. Common sense would yield the same conclusion.

The focus, in other words, is upon potential markets. In the case at bar, Rogers has shown through the affidavits of competent experts that photographers may earn additional income through the sale of "art rendering" rights, namely, creating an art work based on the photograph in a medium other than photography. *See* affidavits of Arnold Newman and Jane S. Kinne. Counsel for Koons said at oral argument that Rogers had expressed no prior interest in the art rendering submarket prior to this litigation. Rogers states in his affidavit that he is contemplating additional uses for his photograph. I do not think the case turns upon Rogers' past conduct or present intention as much as it does upon the existence of a recognized market for new versions or new uses of the photograph, which unauthorized use clearly undermines.

I conclude that this factor, together with the others, militates against fair use.

In *Stewart* the Supreme Court said:

The motion picture neither falls into any of the categories enumerated in § 107 nor meets the four criteria set forth in § 107. "[E]very [unauthorized] commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of America v. Universal Studios, Inc., supra,* 464 U.S., at 451, 104 S.Ct., at 793.

In those circumstances the Court held that defendants' use of the motion picture was not fair use. I reach the same conclusion with respect to Koons' use in his sculpture of the Rogers photograph.

Accordingly plaintiff is entitled to injunctive relief against both defendants.

*Claim for Money Damages*

■ Rogers seeks summary judgment against both defendants for money damages in the amount of $367,000. He contends that amount constitutes the "infringing profits" as specified by 17 U.S.C. § 504(b), which provides:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

As to "deductible expenses," Rogers contends that Koons has not sufficiently quantified them in his summary judgment papers.

I agree that Koons did not attempt in his motion papers a detailed accounting of deductible expenses. But he did refer in his brief to deposition and documentary evidence addressing the issue. Rogers' reply brief quarrels with the deductibility of some of the expenses referred to in the documents produced in discovery. That demonstrates the existence of triable factual issues on the point. I decline to construe Rule 56 so as to preclude Koons from an opportunity to prove at trial the amount of deductible expenses, where it is clear that they must have been incurred in some amount and Koons has indicated in discovery the sort of proof upon which he will rely.

Rogers also seeks damages against Sonnabend Gallery, Inc., Koons' principal gallery which displayed the infringing sculptures. Plaintiff's claim against Sonnabend is not addressed in the briefs. His theory of recovery against Sonnabend is not entirely clear. There is no contention that Sonnabend had anything to do with the creation of the sculpture. Presumably Rogers proceeds against Sonnabend on the theory that "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971) (footnote omitted). I accept that Sonnabend's conduct in advertising and displaying the infringing sculptures materially contributed to Koons' infringing conduct. But Sonnabend must have had knowledge of the infringing activity to be liable on this theory. Plaintiff does not call my attention to any evidence in the record that responsible persons at Sonnabend knew Koons had copied the Rogers photograph.

On this record, therefore, plaintiff's motion for summary judgment for money damages is denied as to both defendants.

Defendants' cross-motion for summary judgment dismissing the complaint is denied for reasons that appear sufficiently from the foregoing discussion.

Plaintiff's motion summary judgment is granted in part and denied in part. Defendants' cross-motion for summary judgment is denied. Plaintiff's counsel is directed to settle an Order and Judgment on seven (7) days' notice within thirty (30) days of the date of this Opinion. The case will thereafter be called for further status conference.

It is SO ORDERED.